David E. Park's Estate.   Margaretta P. Leech's Appeal.

*Wills — Legacy — Income — Profit by a resale of principal of estate — Remainder-man.*

Testator by his will devised and bequeathed the residue of his estate, both real and personal, to his executors in trust, " to receive and collect the rents of the real estate hereby devised to them in trust, and the income and profits of the personal estate, hereby bequeathed to them in trust . . . . to pay the residue of the net income arising from said real and personal estate, held by them in trust," into the hands of his daughter, yearly and every year during her natural life, the corpus of the estate to be paid to her children after her death. *Held*, that a profit realized by foreclosure of a mortgage and a resale of the property bought in by the trustees, was " income and profits " within the meaning of the will and belonging to testator's daughter, and not to the remainder-man. The gift being general gave the remainder-man no title to any specific property, but implied conversion into cash which referred the value of the corpus to the date of the testator's death.

Argued Nov. 8, 1895.   Appeal, No. 256, Oct. T., 1895, by J. F. Leech and Margaretta Park Leech, his wife, from decree of O. C. Allegheny Co., Dec. T., 1894, No. 79, dismissing exceptions to adjudication.   Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Reversed.

Exceptions to adjudication.

David E. Park, the testator, died on the 22d day of February, 1875, testate, leaving to survive him a widow, since deceased, and one daughter, Margaretta, the appellant, now the wife of J. F. Leech.

The auditing judge, OVER, J., stated the facts to be as follows :

The testator, by his will, dated the 19th of February, A. D. 1875, devised and bequeathed the residue of his estate, both real and personal, to his executors in trust, " to receive and collect the rents of the real estate hereby devised to them in trust, and the income and profits of the personal estate, hereby bequeathed to them in trust," (after deducting taxes and expenses and some minor annuities,) " to pay the residue of the net income arising from said real and personal estate, held by them in trust," into the hands of his daughter Margaretta, yearly and every year during her natural life, the corpus of the estate to be paid to her children after her death.

The executors and trustees were James I. Kuhn (who, during the testator's lifetime, was his attorney), Andrew D. Smith and James B. Scott, of whom Andrew D. Smith is the sole survivor.

The executors filed two accounts, both of which were confirmed absolutely; neither account showed complete administration, and as they both showed balances due the executors, no decree of distribution was made on either of them.

They turned over a large sum of money to themselves as trustees, and invested $8,564.11 of it in a mortgage on certain property known as the Adams property, and $27,200 in a mortgage on certain other property known as the McKelvy property.

The interest on these mortgages fell into arrears, whereupon the mortgages were foreclosed, and at the sheriff's sale thereunder, the properties were bought in by the trustees to protect the estate and for the purpose of being resold.

There was no money paid for either property.  No bids were made sufficient to pay the mortgages, and the properties were bought in by the trustees, who paid nothing for them except the costs of the sale.

The deed for the McKelvy property was dated April 20, 1878, and the deed for the Adams property was dated May 18, 1878.

| | | |
|---|---:|---:|
| In February, 1882, the trustees sold a portion of the Adams property to the Pittsburg, McKeesport & Youghiogheny R. R. Co. for | $ 2,250 | 00 |
| which was paid in cash; and on November 1, 1882, they sold the balance thereof to The Pittsburg Furnace Co. for | 25,375 | 00 |
| receiving in cash | $ 5,375 00 | |
| and a purchase money mortgage for | 20,000 00 | |
| The total consideration for both sales was | $27,625 | 00 |
| The trustees paid Mrs Leech on account of back interest on the mortgage | $ 3,018 59 | |
| Their commissions on the sale | 932 79 | |
| The original investment was | 8,594 11 | |
| Total | $12,445 | 49 |
| Making a net profit on the sale of | $15,079 | 51 |

In November, 1886, they sold the McKelvy prop-
erty to A. L. Sailor & Company, for   .    .    $53,000 00
On November 22, 1886, they received   $17,000 00
On November 22, 1887,          "          10,000 00
On November 12, 1888,          "           6,000 00
Leaving a balance of   .    .    .    20,000 00
which was secured by purchase money mortgage on
the premises.

The total consideration was .    .    .    .    .  $53,000 00
They paid Mrs. Leech for back interest  $13,288 33
Their commission on sale .    .    .     1,285 00
The original investment was .    .    27,200 00
Making a total of   .    .    .    .    .    .  $41,873 33.

Showing a net profit on sale of   .    .    .    .  $11,126 67

There is no evidence that at the time of the payment of the
so called back interest to Mrs. Leech, she had any knowledge of
the transaction, or of the profits made, or of her rights in the
premises. It would appear that she accepted what the trustees
gave her, and made no objections.

At No. 164, September term, 1889, the trustees filed their
first account as trustees. At the time this account was filed,
there was still unpaid $20,000 of the purchase money of the
Adams property, and $20,000 of the purchase money on the
McKelvy property, this balance being secured, as already stated,
by purchase money mortgages given by the purchasers.

The account filed did not show any balance for distribution.
It was confirmed nisi on the 2d day of September, 1889, and
absolutely on the 13th day of September, 1889, but it was never
audited, nor was any decree of distribution made thereon.

Between that time and the filing of the present account, Mrs.
Leech learned the facts in regard to these properties, and made
a demand of the surviving trustee for the profits, claiming that
the same should be paid to her.

This was refused by the trustee, and on the filing of his
account, exceptions were filed, one being to the form of the
account, and the other intended to raise the question as to her
right to receive this money.

The auditing judge held that the net profits realized from

the sale of the Adams and McKelvy properties belonged to the corpus of the trust estate. He accordingly dismissed Mrs. Leech's exceptions to the trustee's account.

Exceptions to the adjudication filed by Mrs. Leech were overruled, OVER, J., filing the opinion of the court, and HAWKINS, P. J., filing the following dissenting opinion:

I dissent from the view which the auditing judge has taken in respect of what shall constitute "income and profits" and what principal.

If the gift had been of specific property for life with remainder over, it may be conceded that Mrs. Leech would have had no right to share in the proceeds of its sale, for such proceeds when realized would simply have been the measure of value of the specific property which, by the terms of the will, those in remainder would otherwise have had a right to demand at her death. The gift, however, being general, gave those in remainder no title to any specific property, but implied conversion into cash, which referred the value of the corpus to the date of the testator's death. Had the gift to Mrs. Leech been legal as well as equitable, that value would have been the measure of her liability to those in remainder and the source of the income and profits beneficially intended for her. Investment and reinvestment would have been in her control and for her sole benefit. Those in remainder would have had no interest further than the safety of this corpus and its payment at her death. This being conceded, why should the mere separation of legal and equitable estate imply any change in her beneficial estate? The obvious purpose of separation was to vest in the trustee the duty of administration of the trust estate. The gift of the beneficial interest was as absolute as though coupled with a legal estate. It was no greater or less because of the separation. In either event the trust estate would consist at the beginning of cash, and Mrs. Leech, by the terms of the will, be entitled to whatever "income and profits" it might earn during her life. The direction given by the testator to invest and reinvest necessarily had reference to cash as its subject; for the will spoke as of his death. Had bond been required of the trustee, that must have been the basis upon which its amount would have been fixed and the measure of liability to those in remainder. If the testator had manifested an intent that the fund should be in-

vested in the purchase of lands and thereby work a conversion, any increase in value of the lands must, it is conceded, have inured to the benefit of the remainder: In re Gerry's Accts., 103 N. Y. 445. But there is no such intent apparent upon the face of the will; on the contrary, the direction to invest and reinvest evinces a temporary holding, and negatives any change in the nature of the fund. But however this may be, the investment made here was, in fact, of part of the corpus in a mere temporary security, and it is too plain for argument that the purchase of the mortgaged land under foreclosure proceedings was not a reinvestment. The trust estate was creditor to the extent of the mortgage debt, and the trustee must have accepted tender of the amount at any time before delivery of the deed. The proceeding was simply a process for collection, and part of the necessary duty of the administration of the trust estate: Oeslager v. Fisher, 2 Pa. 467. The purchase did not work conversion into realty. The investment retained its character of personalty, and the trustee had the same power over the land as he had over the mortgage. When the amount of the investment had been restored, what more could be claimed on behalf of those in remainder? Speaking from the death of testator, that was the amount which the will gave them. If Mrs. Leech would have been entitled to ten, twenty, or any larger percentage, reserved in the mortgage, as must be conceded, as income and profit, why not earnings resulting from process of collection by foreclosure? If she is entitled to six per cent out of those earnings, why not to all? It is impossible to understand why the earnings retained by the trustee are not as much "income and profits" as that paid to Mrs. Leech. If it was right to pay her six per cent out of these earnings, the whole earnings logically belonged to her; for they are equally income and profits which sprang from the mortgage investment. It is obviously immaterial how the earnings arise; it is enough that they were the income of the fund invested to give Mrs. Leech the right to them. It is said that "because a loss would have fallen on both the remainder-men and life tenant it is but equitable they should both participate if there be a profit in the same proportion as they would bear to the loss." This rule logically carried out would enable a trustee to create a contingent fund of any profits, whether interest, dividends, or such as the present, and thus

defeat the expressed intent of the testator. But suppose no loss should ever occur, to whom should these admitted profits belong? If profits, the remainder-men could make no claim; and Mrs. Leech would be beyond the need of them. The true test of the equities of the parties must be found in the will; and that gave Mrs. Leech "all the income and profits" during life, and the principal to her children at her death. Loss of part of the corpus, when it happens, is a question of administration which the trustee must answer. If it result from his negligence, he must make it good; if not, he is entitled to credit on the principal; but in any event neither he nor the remainder-men can make her income security for hypothetical losses: Gerry's Accts., supra. The testator having specified the deductions which he intended should be made, thereby excluded all others, and made the net "income and profits" the absolute property of Mrs. Leech. It may well be that if, as has been suggested, a loss had happened in one of these investments, it could have been made up out of gain in the other; for the amounts invested were but parts of a single estate, and the purpose and result of its administration must have been the same, whether the investments have been in several or one sum; the estate and its administration should be treated as entireties. But there was in fact no impairment of principal, and therefore no such question can arise here.

No Pennsylvania cases precisely similar in facts have been found, but analogous cases show (1) a favorable construction given bequests of income, and (2) life donees entitled as well to extra as ordinary profits earned pending their estates. That class of cases in which the earning for coal and royalties in oil have been treated as income, although they consume the principal, are striking illustrations of the first proposition: Eley's Appeal, 103 Pa. 300; Woodburn's Estate, 138 Pa. 606, while scrip dividends, Philadelphia Trust Company's Appeal, 16 Atl. Rep. 734, and the proceeds of sales made by land companies, Oliver's Estate, 136 Pa. 43; Thompson's Estate, 153 Pa. 332, sufficiently illustrate the second. In Earp's Appeal, 28 Pa. 368, which is the leading case, it was held that the surplus profits earned prior to testator's death on stocks were essentially part of the stock itself and principal; while those earned after, whether declared in the form of cash, scrip or stock, belonged to the

life donee. "In the case before us," said the chief justice, "the testator has not made a bequest of the stock itself to appellant; on the contrary he has given them only the income for life. Their interest commences after the death of testator. They have no right whatever to claim the income which had accumulated before his death. . . . It is equally clear that the profits arising since the death of the testator are income within the meaning of the will, and should be distributed among the appellants." This principle was said by Mr. Justice CLARK, in Smith's Estate, 140 Pa. 344, to have ruled all the cases involving the relative rights of donees for life and in remainder down to Oliver's Estate, supra, which was the then last, without modification or change. Oliver's Estate, and the subsequent case of Thompson's Estate, supra, perhaps come nearest the present. There, as here, extraordinary profits were made during the life estate out of temporary investments in real estate, and as the life donees were there entitled, the necessary inference is they are entitled here. The increase in profits belonged to the donees for life, and those in remainder were only interested to the extent of the investment actually made.

The authorities cited in the support of the theory of capitalization of profits are not, in my opinion, entitled to the weight which has been given them. The rule, as quoted from Hill on Trustees, to the effect that "any extraordinary" profits realized from "stocks or other property" belongs to the corpus was no doubt the result of the English cases which had been decided when the text was written; but later cases have greatly modified, if not reversed, it; while it has been distinctly repudiated in Pennsylvania: Earp's Appeal, supra. The case of Van Vleck v. Lounsberry, 34 Hun, 569, decided by a subordinate court of New York, may be classified with the Massachusetts and Georgia cases which were said in Smith's Appeal, supra, to be exceptions to the American, which is the Pennsylvania, rule. The question involved here does not appear to have been decided by the court of last resort in New York: Gerry's Accts., 103 N. Y. 445, cited for the trustee, was made to turn upon a question of construction. "The theory of the will," said that court, "did not contemplate any traffic in securities by the trustee, but a permanent investment in interest-bearing obligations, subject to be sold or exchanged only when the exigencies of the trust required

it to be done. It is quite clear that the life tenant could not have compelled the trustee to sell or convert securities lawfully purchased or held upon the ground that their market value had appreciated in their hands any more than they could have compelled her to make good any depreciation in the value of such securities. Their acquisition and retention was one of the objects contemplated by the will of the testator, and was essential to execute his design, and a proceeding to compel their sale would plainly have been contrary to his intent in creating the trust." The court expressly distinguished this from that class of cases in which temporary investments in stocks or trade have been authorized. It was admitted that Ware's Estate, 12 W. N. C. 571, also cited for the trustee, has been reversed: Middleton's Appeal, 103 Pa. 92; and Hubley's Estate, 16 Phila. 327, like Gerry's Accts., supra, appears to have involved a question of distribution of the proceeds of sale of property specially given wherein the natural increase was held to belong to the remainder.

These suggestions sufficiently indicate the trend of decision, and the principle which should settle the question raised here. The gift being, not of specific property, but general and residuary in its character, the measure of the remainder is its value at the date of testator's death, and that of the life estate the increase thereafter; it follows that the amounts invested in mortgage, which were admittedly parts of the estate at testator's death, should be treated as the corpus; and the residue, in the hands of the trustees arising from foreclosure as belonging to Mrs. Leech, as "income and profit" within the "purpose and intent" of Mr. Park's will.

*Error assigned* was the decree of the court dismissing the exceptions.

*George W. Guthrie,* for appellant.—The fund in dispute did not constitute any portion of the testator's estate. It did not come into existence until many years after his death; it never belonged to him; it does not represent any property which ever did belong to him, or into which any money of his had ever been converted: Navigation Co. v. Moore, 2 Whart. 491.

A purchase of land made in this manner does not work a conversion. For all purposes of administration and distribution,

the fund preserves its original character: Oeslager v. Fisher, 2 Pa. 467.

In addition to the cases cited by Judge Hawkins the attention of this court is called to the cases of Wilkinson v. Duncan, 23 Beav. 469; Beaven v. Beaven (L. R.), 24 Chancery Div. 649; and In re Earl of Chesterfield's Trust (L. R.), 24 Chanc. Div. 643, in which the principle contended for by the appellant is fully sustained.

The authorities cited by the learned auditing judge in deciding against the claim of the appellant should not be permitted to overcome the rules so clearly enunciated.

The decision of the orphans' court of Philadelphia, in Ware's Est., 12 W. N. C. 571, also cited by him, has been reversed by this court in Middleton's App., 103 Pa. 92.

Van Vleck v. Lounsberry, 34 Hun, 569, was decided by a subordinate court. It does not appear to have been affirmed by the court of appeals, and even if it had been, is based upon a rule which has been repudiated by this court.

*John E. Kuhn*, for appellee.—Mr. Park by his will vested the legal title to all his estate, real and personal, in his executors as trustees for the uses and purposes therein mentioned, and by the terms of said will, Mrs. Leech's right and interest in his estate was specifically limited to the net income arising yearly from the residue of said real and personal estate; and when her father died, she was not entitled to any portion of the principal of his estate; and if said trust is administered according to the directions of said testator, she will never receive any portion of the principal: Hubley's Est., 16 Phila. 327.

That advance in the value of securities is not income therefrom but an accretion thereto, was held by the Supreme Court of the United States in Gray v. Darlington, 15 Wall. 63; Hill on Trustees, 175.

In Mudge v. Parker, 139 Mass. 153, it was held that profits received by trustees over and above interest on loans should be treated as capital and not as income: Middleton's App., 103 Pa. 92.

OPINION BY MR. CHIEF JUSTICE STERRETT, January 6, 1896:

This case was before the orphans' court in banc on exceptions to the decree of the learned auditing judge, in which he held

" that the net profits realized from the sales of the Adams and McKelvy properties belong to the corpus of the trust estate," and thereupon dismissed appellant's exceptions to the surviving trustee's account and confirmed the same absolutely.   The court being equally divided in opinion as to the controlling question before it, neither of the exceptions was sustained, and hence the decree of the auditing judge stood as the final decree of the court below.   From that decree this appeal was taken, and the main question here, as in the court below, is what, under the facts of the case, properly constitutes "income and profits," and what "principal."   That question has been so thoroughly considered and so satisfactorily solved by the learned president of the orphans' court in his dissenting opinion, that for reasons therein given we are all satisfied the court erred in holding as it did.

The decree is therefore reversed, with costs to be paid by appellant, and it is ordered that the record be remitted, with instructions to correct the surviving trustee's account in accordance with said dissenting opinion.