# Weir's Estate.

*Personal property—Life estates—Trustees for life tenants—Remaindermen — Investments — Trustees' accounts — Charges — Credits.*

1. Where a life tenant of personal property has refused to give security for the protection of the remainder interests, and a trustee has been appointed by the court, such trustee is not, strictly speak-

ing, the trustee for the remainder interests, but stands toward them in exactly the relation in which the life tenant would have stood had he given bond and received his life estate in possession. The trustee is answerable to the remaindermen upon the termination of the life estate, just as the life tenant's estate would have been at the termination of the trust.

2. In such case, the trustee is not entitled to credit for losses on investments, even though properly made, and may only claim credit for such expenses as were necessarily incident to the filing of the account; he is not entitled to credit for expenses incident to the enjoyment of the life estate.

3. If in such case, the trustee makes investments, he must be prepared on the termination of his trust, or within a reasonable time thereafter, to pay over to the remaindermen the whole fund he received in cash; he cannot require the remaindermen to accept in lieu of cash, property in which the trust funds have been invested.

4. A testator bequeathed personal property to his wife, with remainder over to his children; the wife declined to give security for the protection of the remainder interests, and the court awarded the fund to a trustee for the life of the widow. The trustee loaned part of the fund on a bond and mortgage, and subsequently bought in the property at a sheriff's sale. Upon the death of the widow, the trustee filed an account charging himself with the entire trust fund, and claiming credit for commissions and for the amount lost on the mortgage investment. He included the property purchased at the sheriff's sale as a cash asset of the estate. The Orphans' Court found that the investment had not been negligently made and ordered distribution of the land to the remaindermen as tenants in common. *Held*, that the trustee could not require the remaindermen to accept the real estate in lieu of cash, that he was not entitled to credit for the loss of the money loaned on the mortgage, or for the expenses incident to the management of the trust, but was only entitled to credit for such expenses as were necessarily incident to the filing of the account, and the decree was reversed with directions that the account be reformed and distribution be made accordingly.

Argued Oct. 12, 1915. Appeals, Nos. 45, 63, 65, 66, 67 and 68, Oct. T., 1915, by John P. Weir, Daisy G. Weir Price, Robert McP. Weir, Lulu May W. Loring, Wilson S. Weir and George S. Weir, Administrator of the Estate of Annie W. Weir, deceased, respectively, from decree of O. C. Allegheny Co., April T., 1914, No. 235, dismiss-

ing exceptions to trustee's account, in Estate of James G. Weir, Deceased. Before BROWN, C. J., MESTREZAT, POTTER, STEWART and FRAZER, JJ. Reversed.

Exceptions to trustee's account. Before MILLER, J.

The opinion of the Supreme Court states the facts.

The court dismissed the exceptions. John P. Weir, Daisy G. Weir Price, Robert McP. Weir, Lulu May W. Loring, Wilson S. Weir and George S. Weir, administrator of the estate of Annie W. Weir, deceased, appealed.

*Error assigned* was in dismissing the exceptions.

*Morton Hunter,* with him *John W. Thomas,* for appellants.

*John L. High,* for appellee.

OPINION BY MR. JUSTICE STEWART, January 3, 1916:

We have here five appeals by as many different appellants, from the same decree, the complaint in each being the same. They may be considered together.

James G. Weir, by his last will and testament, gave the residue of his estate to his widow, Annie W. Weir, for life, with remainder over on her death to five of his children, namely, John P. Weir, Daisy G. Weir, Lulu May Weir, Robert McP. Weir and Wilson S. Weir, and appointed his widow, executrix. The widow took out letters testamentary and later filed an account showing a large sum of money in her hands for distribution. Upon her declining as life tenant to give security to protect the remaindermen, at her request the court appointed David I. Shaw, to take and receive the same as trustee, upon his giving the required security. Having complied with the conditions there was distributed to him in cash the entire residue of the estate, amounting to $15,842.00. The trust terminated with the death of the widow 10th

February, 1914, and within a month thereafter the trustee filed his account. In the account as stated he charges himself with the full sum he received from the executrix, and after claiming credit for certain expenditures, including his commissions, amounting to $730.38, he claims a further credit of $6,250.00 for what he denominated the "balance of the corpus." The items composing this balance are enumerated in the summary appended to the account, and among them is the item which gives rise to this controversy. It is as follows:

"1911, 1/12, Fred Sermin bond and mortgage, property taken at fi. fa., No. 212, July Term, 1913, $6,250.00."

The significance of the item is that it represents an investment made by the accountant, out of the fund he held in trust, in a bond and mortgage on the property of one Fred Sermin. The mortgagor having made default, the trustee caused execution to issue, by virtue of which the property was sold and he became the purchaser on his bid of $50.00 subject, of course, to the mortgage, the deed at his instance being made to David I. Shaw, trustee for Annie W. Weir. The credit thus claimed was objected to on the part of the remaindermen; nevertheless, it was allowed and the court, treating the property as a cash asset of the estate equal in amount to the original investment by the trustee, made distribution of the same among the remaindermen, "as tenants in common, the trust property covered by the Sermin mortgage; and the trustee is hereby ordered and directed to convey by deed to the above named beneficiaries as tenants in common." The appeal is from the decree of confirmation of the account and the decree awarding distribution as above. As the case was argued here and in the court below, it was made to turn largely if not exclusively upon the question whether or not the investment in the bond and mortgage had been negligently made. For the most part the many assignments of error relate to the finding and conclusion of the court with respect to this matter, which as we view the case, is not at present for consideration.

The one assignment which raises the only question which we feel called upon to consider is the first, which complains of error in the decree confirming the account and distributing the Sermin real estate to the remaindermen as so much cash.

We cannot give our approval to the method of accounting here adopted. The real estate purchased by the trustee has no proper place in the account. What the accountant received when he entered upon the trust was the sum of $15,842.72 in cash. For this he was accountable to those in remainder upon the termination of the trust, just as the estate of the life tenant would have been had the fund passed into her possession. Those in remainder would have been under no obligation to accept from her legal representatives anything but cash for the full amount distributed to her: Reiff's App., 124 Pa. 145. No more can they be required to accept anything but cash from this accountant who stands in the place of the widow with respect to the trust fund. The requirements of the law are not met when an accountant, whether administrator, guardian or trustee, proposes to hand over to those entitled to the estate specific property, however acquired, in liquidation of his liability, except as the parties in interest agree to an acceptance of the same; and even in such case, the specific property never becomes the subject of credit in an accounting. It may very properly enter into a distribution proceeding but nowhere else. The account as stated here purports to be a final account, and accountant accordingly charges himself with the entire sum that he received. He reduces his liability therefor, however, by taking credit for what at best can be regarded only as an unadministered asset, at a valuation fixed by himself, thus imposing on the remaindermen specific property and reducing to that extent the balance with which he would be properly chargeable. "Distributees may indeed consent to accept certain goods and chattels in specie without conversion, as is frequently done in settlement of estates, but such

arrangement in no case affects the theory of the law, that the estate is first to be administered and then enjoyed......The administration account always exhibits a balance in cash, not in specific goods, whether bonds or horses; and though an heir may take bonds or horses as cash, the account must show and always does show a cash balance": Strode v. Com., 52 Pa. 181. In the present case a cash balance is shown, but one reduced to the extent of $6,250.00 by a credit improperly claimed and allowed.

The accountant stands in a somewhat peculiar position towards these remaindermen who are excepting. He is not, strictly speaking, their trustee, but stands towards them in exactly the relation that the life tenant would have done had she given bond and received her life estate in possession. He is answerable to them just as the life tenant's estate would have been on the termination of the trust. Her estate would have been answerable to the last penny in cash for the actual amount that the life tenant had received. Whatever investments were made by her substitute, this accountant must stand, so far as the remindermen are concerned, as though she had made them for herself. They were made for her, and it was not a matter that concerned these appellants whether the fund was invested, or what it was invested in, except so far as their security was endangered. The accountant's plain duty was to be prepared on the termination of his trust, or within a reasonable time thereafter, to pay over to the remaindermen the whole fund he had received in cash. We can see no difference in principle, or distinction in legal incidents, between such a trust as this where actual cash was the subject, and a trust with respect to real property where a life interest is given to one and the remainder to another. The remaindermen in the latter case cannot be required to bear the expenses incident to the enjoyment of the life estate. If the expense of cultivating a farm, or running a manufacturing establishment must be wholly defrayed by the

life estate, whether in the hands of a trustee or the life tenant, what reason can there be for imposing on the remaindermen, in relief of the life tenant, such expense as may be required for the care, custody and employment of a life estate consisting of cash? The very recent case of Letterle's Est., 248 Pa. 95, leaves this no longer an open question.

For the reasons we have stated the decree confirming this account and making distribution must be reversed. We have indicated how the account must be reformed. To be more specific: on the debit side accountant has charged himself with the entire trust fund, and this is correct; the credit taken for the property purchased by the accountant is altogether wrong, and must be stricken from the account. The true balance for distribution must be ascertained by deducting from the total assets with which the accountant is debited such expenses as were necessarily incident to the filing of the account, and these alone. The balance thus ascertained will be the amount for distribution among those entitled. If this leaves in the hands of the accountant the Sermin property, it is because this property forms no part of the trust estate for which the accountant is responsible.

The decree is reversed, and the record is remitted with directions that the account be reformed and distribution be made in accordance with the views expressed in this opinion. A like judgment is directed in each of these appeals.