## Ertel's Estate

Before Lamorelle, P. J., and Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ., and Marx, P. J., twenty-third judicial district.

The facts appear from the adjudication of

MARX, P. J., twenty-third judicial district, specially presiding, Auditing Judge.—Sophia Ertel, who died May 7, 1911, made a bequest of $200 for masses, and gave the residue of her estate unto her sister, "Catherine Reith for and during the term of her natural life, and upon the death of the said Catharine Reith I give devise and bequeath the said estate unto my niece Mary J. Wallis, wife of Dr. J. Frank Wallis for and during the term of her natural life, and upon the death of the said Mary J. Wallis to such child or children as she may leave surviving if more than one in equal shares as tenants in common."

The present accounting is of the fund awarded by adjudication filed October 1, 1912, sur account of Mary J. Wallis, executrix of the will of said Sophia Ertel, deceased.

The reason for the filing of the account is the resignation of Continental-Equitable Title and Trust Co. as trustee.

Attached to the account is a writing signed by said Mary J. Wallis, certifying that she has examined the account, finds it correct, and requests its confirmation. She also states that she has received all income prior to that accounted for and that she waives the filing of a complete income account.

The accountant debits itself with the $1,524.28 awarded to it by the adjudication of Gummey, J. The only credit claimed is the cost of an affidavit to the account, $.50, leaving a balance of principal of $1,523.78. The principal is invested as follows:

| | |
|---|---|
| $800 share $10,000. Mortgage Nos. 1323-25 South St. and No. 1322 Rodman St., carried @ | $800.00 |
| $600 equity in $206,700 pooled mortgage, carried @ | 600.00 |
| Cash | 123.78 |
| | $1,523.78 |

Mr. Smith, consel for Mary J. Wallis and the remaindermen, states the questions involved as follows:

"(1) Is the accountant a trustee for the common-law life tenant and as such under obligation to turn over cash in settlement of its underaking? (2) Does the fact that the life tenant is still living alter the rule of liability of such trustee to turn over cash?"

Here it becomes necessary to state certain record facts.

On or about October 28, 1911, a petition was presented on behalf of the children of Mary J. Wallis, setting forth that they had received notice that a petition was about to be presented for leave to sell the real estate Nos. 2838 and 2840 Swanson Street for the payment of debts. The petition further stated that if it should appear that both properties were not required to be sold for that purpose, then a sale of the remaining property would be necessary for the benefit of the parties in interest as the properties were in such condition that they were unprofitable. The court was asked to appoint Continental-Equitable Title & Trust Co. for the children of the life tenant and unborn children in remainder to protect their interests, and on October 28, 1911, Continental-Equitable Title & Trust Co. was appointed trustee to protect the contingent interest of the children and the interests of unborn children.

On November 2, 1911, a petition was presented by Mary J. Wallis as executrix. In it it was alleged that the personal estate was insufficient to pay the debts of the decedent. The prayer of the petition was for an order to sell said premises, or so much thereof as might be necessary for the payment of the debts of testatrix. Continental-Equitable Title & Trust Co., at the foot of the petition, acknowledged that it had received notice that said petition would be presented. On November 8, 1911, the prayer of the petition was granted and the executrix was directed to expose said real estate to public sale and to make report of her doings to the court for approval and confirmation.

The real estate was sold in accordance with the decree of the court and the proceeds thereof and the withdrawal value of two perpetual policies were included in the first account of Mary J. Wallis as executrix.

Here it should also be noted that Catharine Reith, the first life tenant, predeceased testatrix.

After the sale of the real estate an account was filed by the executrix. At the audit a petition was presented by "Mary J. Wallis, executrix and tenant for life." The prayer thereof was "that the balance found upon the adjudication of her account as executrix . . . be awarded to Continental-Equitable Title & Trust Co., trustee as aforesaid, to invest the same, pay the income to your petitioner for life, and at her death to pay the principal to the parties legally entitled thereto, upon entering such security as the court may direct."

At the audit, Alfred C. Ferris, Esq., appeared not only for the accountant, but for "all parties in interest."

By the adjudication of Gummey, J., confirmed nisi October 1, 1912, he awarded the balance remaining after the payment of the bequest for masses and the debts and administration expenses of the decedent, "at the request of the life tenant, Mary J. Wallis . . . to Continental-Equitable Title & Trust Co. as trustee, to invest the same and pay the net income to her for life, with remainder to those entitled to receive the same in accordance with the provisions of decedent's will; the collateral inheritance tax due on the life estate of Mary J. Wallis to be paid the Commonwealth of Pennsylvania out of income."

It is to be noted, first of all, that the award to Continental-Equitable Title & Trust Co. was made in 1912, prior to the passage of the Fiduciaries Act of 1917.

Mr. Smith relies mainly upon Weir's Estate, 251 Pa. 499, and Kirkpatrick's Estate, 284 Pa. 583.

In Kirkpatrick's Estate, supra, the will of testator provided that the residue of his estate should go to his wife "for and during the term of her natural life, or so long as she remains my widow, she to have full possession, control over and management of the principal of all my personal estate, and to manage and invest same in whatever manner she may deem proper and shall not be required to give any security therefor, to my hereinafter named executors."

The testator died in 1890 and his widow received from his estate $155,112.67. She died in 1924, naming as her beneficiaries the remaindermen designated in the will of her husband. The widow's estate was appraised at $848,439.64. It was contended that part of these assets of the widow represented increased value of testator's property since his death and should be distributed as his estate and not be the subject of an inheritance tax of $16,000. The court below held that the widow took a life estate in the amount first stated, and that only that much went to the children from their father.

The Supreme Court affirmed, and Mr. Justice Kephart, who wrote the opinion, used the following language:

"The Act of May 17, 1871, P. L. 269, provides that, where personal property is given to one for life with remainder over, the life tenant may take possession thereof on giving security. We held in Reiff's App., 124 Pa. 145, that one, under such circumstances, giving security under a similar act, became simply a debtor to the remaindermen for the appraised value, the latter's claim being payable out of the life tenant's estate or by his sureties. Letterle's Est., 248 Pa. 95, is to the same effect; the life tenant was a debtor not a trustee, and had to pay over to the remaindermen only the amount originally received. In Weir's Est., 251 Pa. 499, where the life tenant refused to give bond, the orphans' court, on her application, appointed a trustee to receive the property. We held the trustee stood in the same position as the life tenant, and the appraised value must be turned over without deduction. None of these cases were disturbed by Loewer's Est., 263 Pa. 517, 520. The essential difference is there pointed out by the present Chief Justice. In Weir's Est., the application for a trustee was on petition of the life tenant alone without recognition of any right or interest in the remaindermen. In Loewer's Estate, the petition was by the remaindermen and life tenant, all tacitly recognizing an interest in the former beyond the sum actually turned over to the trustee. They there treated the property as having been placed in trust for all purposes by the testator.

"Where the testator directs that no security be given, the legal relations between life tenant and remaindermen must be the same as if a bond had been given under the Act of 1871. Prior to that act, section 49 of the Act of February 24, 1834, P. L. 70, 83, controlled; the wording is substantially the same as in the Act of 1871."

Mr. Justice Kephart also said:

"When Allen Kirkpatrick's estate was distributed, a decree was entered on September 29, 1891, awarding the $155,112.67 to 'Rebecca H. Kirkpatrick in trust for the purpose specified in will of deceased.' This decree did not, however, fasten a trusteeship on the life tenant with respect to that property; to say 'in trust' was purely a gratuitous and voluntary statement on the part of the judge who made the decree, for there was no controversy on such a question, or on any other question, before the court at that time. It must be disregarded. The title here involved goes back to the original testator's will and is in no way dependent upon that decree."

Although this question arose subsequent to the passage of the Fiduciaries Act of 1917, the court applied the law as it existed prior thereto, because the award to the widow was made prior to the passage of said act.

If the life tenant alone requested that the fund be awarded to Continental-Equitable Title & Trust Co. in trust, then the present trustee must account for the amount awarded it upon the audit of the executrix's account in cash. If, on the other hand, the request was by both the life tenant and the remaindermen, then the liability of Continental-Equitable Title & Trust Co. is that of a trustee and it can discharge its liability by turning over the investments.

It is to be noted that no formal petition was presented by the life tenant. The request for an award to Continental-Equitable Title & Trust Co. as trustee was made at the audit of the account. The remaindermen were represented by counsel at that audit. It must be assumed that they knew that the life tenant was asking the auditing judge to award the fund to Continental-Equitable Title & Trust Co. as trustee and that they acquiesced in this request. The situation is quite different from a case where a petition is presented by the life tenant for the appointment of a trustee and where the remaindermen do not join in the prayer of the petition and do not have any notice of its presentation.

The auditing judge is of the opinion and so rules that the trustee was appointed on the request not only of the life tenant, but of those entitled in remainder.

The fact that the life tenant is living does not in any way, in the opinion of the auditing judge, affect the matter.

The balance of principal, $1,523.78 composed as set forth in the account, less counsel fee of $50, is awarded to a succeeding trustee when duly appointed and qualified.

The income, $8.76, with any further collections of income and interest, if any, on deposits to time of actual distribution, is awarded to Mary J. Wallis.

Payment and distribution is so decreed, with leave to make any and all necessary assignments and transfers.

The said incoming trustee is to be liable for management only so far as the present securities are concerned and should not in any event be liable for the amount paid for investments which it did not make: See Szczwpkowski's Estate, October Term, 1928, No. 3952, adjudication by Gest, J.

*Joseph Neumann Smith,* for exceptants.

*Murray H. Spahr, Jr.,* of *Brown & Williams,* contra.

STEARNE, J., June 30, 1933.—This is an application to require a trustee to turn over cash to its successor in lieu of the investments made by it during the pendency of the trust.

To comprehensively appreciate the significance of the present application a brief review of the historical background is helpful.

A legal life tenant, who enters security for the protection of the remaindermen, becomes the sole and absolute owner of the property, which thereafter ceases in every way to form any part of decedent's estate: Reiff's Appeal, 124 Pa. 145; Letterle's Estate, 248 Pa. 95; Weir's Estate, 251 Pa. 499; Kirkpatrick's Estate, 284 Pa. 583; Strawbridge's Estate, 14 D. & C. 703.

This result follows from the terms of the Act of May 17, 1871, P. L. 269, reenacted with modifications by section 23 of the Fiduciaries Act of 1917.

But a life tenant may refuse or neglect so to enter security for the protection of the remaindermen. In such cases, under both acts, the orphans' court is empowered to appoint a trustee to receive the fund and give security therefor.

In 1916, prior to the passage of the Fiduciaries Act of 1917, the Supreme Court held in Weir's Estate, 251 Pa. 499, that such a trustee was not, strictly

speaking, a trustee for the remaindermen but stood in the same relationship as the life tenant herself as an insurer of the fund.

The commissioners deemed this rule too harsh and wrote at page 166 of their report:

"The present law seems to require amendment in several particulars. It makes no provision for the case that frequently arises where the life tenant refuses or is unable to enter security; nor does it provide for the case that also frequently arises under existing laws where a widow, for example, is entitled for life to her share of the proceeds of real estate. In such cases it has been the practice for the courts ex necessitate to appoint a trustee without express legislative warrant. The duties of such a trustee were of course not defined by statute; and the Supreme Court has recently held in Weir's Estate, 251 Pa. 499, that such a trustee practically takes the place of the life tenant, who or whose estate under existing decisions is responsible to the remaindermen at the termination of the life estate for the exact value of the assets received by the life tenant, who thus becomes practically an insurer of the fund. In such circumstances it will be difficult to find any person or corporation who would be willing to assume this responsibility, and this section has been framed to assimilate the duties and responsibilities of such a trustee to those of other trustees."

Consequently, the twenty-third section of the Fiduciaries Act of 1917, referring to such trustees, provides:

"He shall not be an insurer of the trust fund, and shall be liable to the persons interested in the income or corpus of the trust fund only for such care, prudence and diligence in the execution of the trust as other trustees are liable for."

Following Weir's Estate, supra, were two cases relating to such trusteeships created prior to the Fiduciaries Act: Loewer's Estate, 263 Pa. 517, and Kirkpatrick's Estate, 284 Pa. 583. In the Loewer case the application for a trustee was joined in by the remaindermen, while in Weir's Estate the petition was by the life tenant alone, without the joinder of the remaindermen. Kirkpatrick's Estate (p. 586) point out this distinction. As a result, in cases arising prior to the Fiduciaries Act, the only ones which hold a trustee as an insurer of the fund are those where the life tenant alone acts without consent or joinder of the remaindermen.

The legal life estate was created here under the will of Sophia Ertel, who died May 7, 1911. It was for the life of her niece, Mary J. Wallis, with remainder to such child or children as she might leave surviving. The life tenant was also named as executrix.

The executrix was directed to sell real estate for the payment of debts and accounted for the proceeds in her account as executrix. It is also to be noted that, prior to the decree ordering sale of real estate for payment of debts, the present accountant was appointed trustee for the remaindermen and for the interests of unborn children.

At the audit of the account, the life tenant petitioned the auditing judge to award the fund to the present accountant "trustee, as aforesaid, to invest the same, pay the income to your petitioner for life and at her death to pay the principal to the parties legally entitled thereto", with which request the auditing judge complied.

It is to be noted as the important and controlling element in this case, that at the audit counsel entered his appearance not only for the life tenant but "for all parties in interest." No exceptions were filed and the adjudication was confirmed absolutely.

Pursuant to the adjudication the accountant received the cash composing the balance and invested the same as directed. No question is raised as to the character of the investments. The trustee, retiring from business, has accounted for the fund and the life tenant and remaindermen insist that because this appointment occurred prior to the Fiduciaries Act of 1917 the trustee became an insurer of the fund and therefore must turn over cash to the succeeding trustee.

We agree with the conclusion of the auditing judge that the appearance of the remaindermen at the audit and their acquiescence in the adjudication was a substantial joinder in the request of the life tenant for the appointment of a trustee. In such circumstances, the trustee was acting not alone for the life tenant but for all parties in interest. Such a situation, in our opinion, was the equivalent of the remaindermen joining in a petition for a trustee.

Furthermore, the award read, inter alia, "to invest the same" etc. The accountant was therefore obeying the mandate of the court and should not, under any circumstances, be held liable for doing that which the court expressly directed.

The exceptions are dismissed and the adjudication is confirmed absolutely.