Amy H. DuPuy, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 75907.   Promulgated July 18, 1935.

*Miles H. England, Esq.*, for the petitioner.
*E. A. Tonjes, Esq.*, for the respondent.

#### OPINION.

Smith: The respondent has determined a deficiency in petitioner's income tax for 1931 in the amount of $8,693.52. So much of the deficiency as is here in dispute results from the respondent's action in adding to the petitioner's income the gains realized upon the sale of certain securities belonging to the residuary estate of the petitioner's deceased husband, Herbert DuPuy, in which the petitioner was bequeathed a life estate.

The petitioner's husband, Herbert DuPuy, died testate on January 10, 1930. After making numerous specific bequests, the decedent provided in article 13 of his will that:

All the residue and remainder of my estate and property, real and personal, I dispose of as follows,—

(A) If my wife, Amy H. DuPuy, shall survive me, I devise and bequeath the said property to her, for and during the term of her life, and she shall receive and retain, as her absolute property, the rents, issues, income and profits thereof accruing during her life. I hereby authorize and empower my said wife during her life to retain any and all of my investments or property, real and personal, which may come into her possession, under this Article of my will, or in her discretion, from time to time, to sell, absolutely and in fee simple or for any less estate (at public or private sales to such person or persons, for such price and upon such terms as she shall deem proper) convey and convert all or any part thereof, and from time to time, in like manner, to invest, sell, convey and reinvest the said property in such real estate, stocks, bonds, notes, mortgages or other securities as she shall deem to be safe and wise investments. She shall not be required to convert all or any part of said property into legal investments for trustees, or to invest any of the proceeds received from the sale or other disposition thereof, in legal investments for trustees. No purchaser of any property from my said wife shall be under any responsibility or liability for the application of the

purchase money. In holding or managing any real estate, which may at any time form a part of the property to be held by my wife during her life, as aforesaid, I authorize and empower my said wife, from time to time, not only to lease the same in such manner, for such time, upon such terms and at such rental as she shall deem proper, but also to improve all or any part of such real estate by the erection of buildings or other improvements thereon or otherwise, and to repair, alter or remove the same as she shall deem proper and make all such expenditures in connection therewith as she may deem advisable, all such expenditures to be made from the principal of the funds or property in the possession of my wife as legatee or devisee for life under this will. My wife shall not be required to give any security as legatee or devisee for life, under this will.

Article 16 of the will provides in part that:

I hereby appoint my wife, AMY H. DuPuy, and the PEOPLES-PITTSBURGH TRUST COMPANY, of Pittsburgh, Pennsylvania, jointly as executors of this will. * * *

I hereby authorize and empower my executors or executor, who may be acting as aforesaid, to sell at public or private sales all or any part of my real or personal estate (except that specifically devised or bequeathed) to such person or persons, for such price and upon such terms as they shall deem proper, and to transfer and convey the property thus sold without any liability of the purchasers for the application of the purchase-money.

During the taxable year 1931 certain securities belonging to the decedent's residuary estate, consisting of 16½ shares of stock of the Klondike Supply Co. and miscellaneous bonds, were sold at a profit of $12,235.38. The profit on the sale of the shares of stock, which occurred in complete liquidation of the company, was $10,293.50 and on the bonds $1,941.88, these amounts representing the difference between the selling price of the securities and their value at the date of death of the testator. In computing the deficiency herein the respondent has increased the petitioner's net income by the amount of $50,051.86, including the profits on the sale of the above described securities computed at $26,221.15. The parties have stipulated in this proceeding that except for the item of $26,221.15 the computation as shown in the deficiency notice is correct and have further stipulated that the correct amount of the profit on the sale of the securities in question is $12,235.38 instead of $26,221.15.

It is further stipulated that:

The sum of $12,235.38, gains realized on sales of securities, has been treated by Peoples-Pittsburgh Trust Company, Pittsburgh, Pennsylvania, the agent for the petitioner, as a corpus or capital gain of the trust estate in which Mrs. Amy H. DuPuy has a life interest and has not in fact been distributed or paid to Mrs. Amy H. DuPuy.

It is further stipulated, subject to its materiality, that of the $10,293.50 gain realized on the final liquidation of the Klondike Supply Co. only $6,997.84 represents undistributed earnings on the 16½ shares of stock owned by the decedent's estate accruing or

earned from the date of the decedent's death, January 10, 1930, to the date of the liquidation of the company on September 30, 1931.

The petitioner's rights in the residuary estate as well as her tax liability in respect of the income from the estate must, of course. be determined by construction of the will in accordance with the testator's intent and the laws of the Commonwealth of Pennsylvania. The wording of the will is that the petitioner " shall receive and retain, as her absolute property, the rents, issues, income and profits thereof accruing during her life." What part of the gains derived from the sale of the bonds and the shares of stock over and above their value at the date of death of the testator constitutes " income and profits " distributable to the petitioner?

It is the petitioner's contention that the amounts of $1,941.88, representing the gain on the sales of bonds, and $3,295.66, which is the amount of gain realized on the liquidation of Klondike Supply Co. due to appreciation in value of the shares of stock and not undistributed earnings accrued or earned after the decedent's death, are not taxable income to the petitioner " for the reason that these gains are accretions to the principal of the trust estate and therefore belong to the remaindermen named in Mr. DuPuy's will." The petitioner concedes in her brief that $6,997.84 of the $10,293.50 gains realized on the liquidation of the Klondike Supply Co., representing the undistributed earnings since the date of the testator's death attributable to the $16\frac{1}{2}$ shares of stock owned by the estate, is taxable to her under authority of *In re Nirdlinger's Estate*, 290 Pa. 457; 139 Atl. 200, decided June 25, 1927. The Supreme Court of Pennsylvania held in that case, making an extensive review of its prior decisions, that where shares of corporate stock held in trust under the testator's will were sold for a price greater than their value at the time of the testator's death, the increase in value being due in part to the accumulation of earnings and in part to the enhancement of original value, such part of the gain on the sale as represented the accumulated earnings since the testator's death belonged to the life tenant, who was entitled to receive the " rents, issues, income, dividends and revenue " of the trust estate for life, and that the gain attributable to the enhancement of value belonged to the remaindermen. The court in its opinion said:

Under the Pennsylvania or American rule adopted in most American jurisdictions, the rights of the life tenant and the remainderman to an extraordinary cash or stock dividend declared during the life tenancy are determined by a division of the dividend between the claimants so as to preserve intact the book value of the devised property (the corpus) as it existed at testator's death. This was made clear by the decision in *Earp's Appeal*, 28 Pa. 368, long recognized as a leading authority. The effect of the rule is to give to the life tenant the income which has been earned since the trust came into being, but, at the same time, to preserve the value of the corpus as it was at the date of the death of the

testator, or, to use a more convenient term, to preserve the intact value of the estate. This intact value includes the par value of the stock, plus any accumulation of income earned before the death of the testator. *Earp's Appeal, supra.* From it must be subtracted capital losses. *Dickinson's Estate,* 285 Pa. 449, 132 A. 352. * * *

* * * * * * *

* * * In *McKeown's Estate,* 263 Pa. 78, 106 A. 189, one phase of accumulated earnings presented itself when the stock of one company was sold by its shareholders to another concern. What actually happened was a sale of stock by the trustee, but we treated it as a distribution by a corporation in the course or liquidation. A part of the proceeds was accumulated earnings; we held it should be distributed as though the company had in fact declared a dividend, and hence was payable to the life tenant, the intact value being unimpaired. The facts in that case, important to the instant case, were substantially as follows: Four thousand shares of stock of the Pure Oil Company, at the death of testator, had an intact value of $12.22 a share. It was sold for $24.50 a share to an Ohio company, which acquired all Pure Oil stock. The book value at this time was $15.18, the difference, $2.96, being due to accumulation of earnings. The difference between the selling price and the then book value, $9.32, represented the inherent, intrinsic, or super value of the stock over and above its then book value, and was awarded, without objection, to the corpus of the estate. The life tenant claimed the accumulated profits, or $2.96 per share. The court below refused to allow the claim and was reversed by this court in an opinion by Mr. Justice Simpson. * * * We will not detail the reasoning on which we reached the conclusion that accumulated earnings, not declared by dividends, but realized on a sale, belong to the life tenant, but will state the four primary rules evolved by Mr. Justice Simpson from the decided cases:

" * * * (4) When a corporation is liquidated, those entitled to the income of the trust are to be awarded so much of the sums received for the stock as they show was income accruing after their right to income began, and the balance goes to the principal; and this is so although the course pursued takes the form of a sale of the stock."

* * * * * * *

In conclusion, we may summarize what has been said above. * * * Fourth, where the trustee sells stock and the sale in substance effects a distribution, as in the case of liquidation of the company, the court will disregard the form and treat the sale as a distribution. *McKeown's Estate, supra.* * * * Sixth, where the trustee sells stock and receives a price greater than the value of the stock at the time of the death of the testator, or at the time it was acquired, the supervalue being due to the enhancement or increment of original value through the stock's earning power, or what may be termed its "good will" or its intrinsic value, this increased value is part of the corpus and belongs to the remainderman. * * *

We will first inquire whether in the instant proceeding there was a trust such as existed in *Nirdlinger's Estate, supra,* and whether the petitioner held the testator's residuary estate as trustee for the remaindermen. The testator in his will made no provision for such a trust. He did create a specific trust in respect of other properties of his estate, but not in respect of his residuary estate as to which the will provides: " I devise and bequeath * * * to her [the petitioner], for and during the term of her life, and she shall receive

and retain, as her absolute property, the rents, issues, income and profits thereof accruing during her life."

In *In re Kirkpatrick's Estate*, 284 Pa. 583; 131 Atl. 361, decided November 23, 1925, the testator bequeathed the residue of his estate to his wife—

* * * for and during the term of her natural life, or so long as she remains my widow, she to have full possession, control over, and management of the principal of·all my personal estate, and to manage and invest same in whatever manner she may deem proper, and shall not be required to give any security therefor, to my hereinafter named executors,

with the remainder over to his children. The court held that the widow was a debtor to remaindermen in the amount originally received, and not a trustee, and that, as respects liability for inheritance tax, the increase of testator's estate descended to the children from the widow and not from the testator. In its opinion the court said:

The Act of May 17, 1871 (P. L. 269), provides that where personal property is given to one for life with remainder over, the life tenant may take possession thereof on giving security. We held in *Reiff's Appeal*, 124 Pa. 145, 16 A. 636, that one, under such circumstances giving security under a similar act, became simply a debtor to the remaindermen for the appraised value, the latter's claim being payable out of the life tenant's estate or by his sureties. *Letterle's Estate*, 248 Pa. 95, 93 A. 935, is to the same effect; the life tenant was a debtor, not a trustee, and had to pay over to the remaindermen only the amount originally received. * * *

Where the testator directs that no security be given, the legal relations between life tenant and remaindermen must be the same as if a bond had been given under the act of 1871. Prior to that act, section 49 of the Act of February 24, 1834 (P. L. 70, 83), controlled; the wording is substantially the same as in the act of 1871. Under the earlier statutes we held the life tenant was not a trustee within the Act of June 16, 1836 (P. L. 784). *Mackinson* v. *Mackinson*, 2 Grant, Cas. 286. And under the act of 1871, further bearing on the nonexistence of a trust estate, we held that no fiduciary relation existed to prevent the life tenant from becoming a purchaser of testator's property. (*Fidelity Ins. Trust & Safe Deposit Co.* v. *Dietz*, 132 Pa. 36, 18 A. 1070) ; also where the life tenant has unlimited power of consumption his estate is not compelled to show what has been consumed (*Welsh's Estate*, 239 Pa. 616, 86 A. 1091). Here testator did not direct his residuary estate to be held in trust for the use and benefit of his wife for life nor as long as she remained his widow, but gave her " full possession, control over and management of the principal of the personal estate and to manage and invest the same in whatever manner she deems proper."

Other cases in which the Supreme Court of Pennsylvania has held that life tenants do not hold as trustees for the remaindermen are *In re Welsh's Estate*, 239 Pa. 616; 86 Atl. 1091; *Appeal of Reiff*, 124 Pa. St. 145; 16 Atl. 636; *German-American Title & Trust Co.* v. *Fidelity Insurance, Trust & Safe-Deposit Co.*, 132 Pa. St. 36; 18 Atl. 1090; *In re Letterle's Estate*, 248 Pa. 95; 93 Atl. 935. It seems

conclusive upon authority of the cases cited that the petitioner herein was not a trustee under the will of her deceased husband and was not subject to the rule restricting the trustee's rights to the income of the residuary estate.

The petitioner submits that it is immaterial whether she is considered a trustee or merely a debtor to the remaindermen, since in either situation the amount of her debt or the amount of her trust fund is determined by her right to the increment.

Was the petitioner, as life tenant and not trustee of the residuary estate, entitled to the use of, and therefore taxable on, such part of the income realized on the sale of the securities held in the residuary estate as represented the increase in value thereof due both to the enhancement of value and the accumulation of earnings during the life tenancy? In *Letterle's Estate, supra,* decided February 8, 1915, it was held that where personal property is given to one for life with remainders over, the life tenant, on taking possession and giving bond to protect the remainder interest, as required by the Act of May 17, 1871 (P. L. 269), may use the property at his own discretion, and on his death his estate will be entitled to any profit made in the investment thereof; the life tenant being not a trustee for the remaindermen, but their debtor in the sense that his estate is liable only for the appraised value of the property when received by him. To the same effect is *In re Weir's Estate,* 251 Pa. 499; 96 Atl. 1086, where the life tenant refused to give bond as required by the statute and a trustee was appointed by the court to hold the property.

A different conclusion was reached in *In re Loewer's Estate,* 263 Pa. 517; 106 Atl. 789, decided February 10, 1919, where the life tenant under the will refused to give bond and a trustee was appointed by the court to take over the estate. In holding that the increase in value of the securities held in the trust estate during the life tenancy inured to the remaindermen and not the life tenant, the court distinguished *Letterle's Estate* and *Weir's Estate, supra,* the former on the grounds that there the bond was given by the life tenant as required by law and no trusteeship existed, and the latter on the ground that the trustee in that case was appointed upon the sole application of the life tenant without joinder of or notice to the remaindermen, while in *Loewer's Estate* the trustee was appointed on the application of all parties in interest, and further that in *Loewer's Estate* the property consisted of securities held in kind and not a cash fund as in *Weir's Estate.*

In *In re Chalfant's Estate,* 294 Pa. 331; 144 Atl. 134, decided November 26, 1928, it was held that a life tenant was entitled, as against the remaindermen, to all of the profits from the sale of tangible assets of the testamentary estate. The court distinguished *Loewer's Estate, supra,* saying:

*Loewer's Estate*, 263 Pa. 517, 106 A. 789, relied on by appellant, does not aid him. There, bonds and other securities, given to the widow for life, remained in the trust unconverted until the death of the widow, and it was held that they had at all times belonged to the corpus of the trust estate, and hence passed to the remaindermen in specie. The fact that they had enhanced in value, as would also have been the case had the opposite been true, was an incidental matter wholly unimportant; the remaindermen got exactly what testator bequeathed to them. The same conclusion would have been reached in the instant case, if the tangible assets had been unconverted. Fortunately for him, they were sold by him in carrying on the business, for their character was such that, if this had not been done, they would have had little or no value when the life tenant died.

In *In re Dickinson's Estate*, 285 Pa. 449; 132 Atl. 352, decided February 8, 1926, it was held that extraordinary dividends on corporate stock left by decedent in trust were distributable by giving to the corpus sufficient to keep intact the value of the shares as they were at the time the trust began and giving the rest of the dividends to those entitled to the income. The court there said:

\* \* \* From *Earp's Appeal*, 28 Pa. 368, to *Harkness' Estate*, 129 A. 458, 283 Pa. 464, we have uniformly held that:

"Where extraordinary dividends, whether of cash, scrip or stock, are declared and paid on shares of corporate stock left by a decedent in trust, they are to be distributed by giving to the corpus sufficient to keep intact the value of the shares as they were at the time the trust began, and by giving the rest of the dividend to those entitled to the income of the estate."

To the same effect is *In re Wittmer's Estate*, 129 Atl. 85, decided April 13, 1925, and *In re Harkness' Estate*, 129 Atl. 458, decided May 11, 1925.

The petitioner in her brief cites and relies upon *In re Graham's Estate*, 198 Pa. 216; 47 Atl. 1108. There, the life beneficiary of a trust estate was held not entitled to the profits on the sale, by condemnation, of certain stock and bonds of the trust estate, which profits were not attributable to surplus or earnings of the corporation. The court in that case pointed out that under the testator's will the life tenant was entitled only to the "income" of the trust estate and not the "profits", which possibly distinguished that case from *In re Park's Estate*, 173 Pa. 190; 33 Atl. 884, as well as the instant case. In *Park's Estate* the court held that the profits on the sale of securities of a trust estate belonged to the life tenant, who was entitled to receive the income and profits thereof. The court there adopted as its opinion the dissenting opinion of one of the judges in the lower court, which reads in part as follows:

I dissent from the view which the auditing judge has taken in respect of what shall constitute "income and profits," and what "principal." If the gift had been of specific property for life, with remainder over, it may be conceded that Mrs. Leech [life tenant] would have had no right to share in the proceeds of its sale; for such proceeds when realized would simply have been

the measure of value of the specific property which, by the terms of the will, those in remainder would otherwise have had a right to demand at her death. The gift, however, being general, gave those in remainder no title to any specific property, but implied conversion into cash, which referred the value of the corpus to the date of the testator's death. Had the gift to Mrs. Leech been legal as well as equitable, that value would have been the measure of her liability to those in remainder, and the source of the income and profits beneficially intended for her. Investment and reinvestment would have been in her control, and for her sole benefit. Those in remainder would have had no interest further than the safety of this corpus, and its payment at her death. This being conceded, why should the mere separation of legal and equitable estates imply any change in her beneficial estate? The obvious purpose of separation was to vest in the trustee the duty of administration of the trust estate. The gift of the beneficial interest was as absolute as though coupled with a legal estate. It was no greater or less because of the separation. In either event the trust estate would consist, at the beginning, of cash, and Mrs. Leech, by the terms of the will, be entitled to whatever "income and profits" it might earn during her life. * * *

\* \* \* \* \* \* \*

The authorities cited in the support of the theory of capitalization of profits are not, in my opinion, entitled to the weight which has been given them. The rule as quoted from Hill, Trustees, to the effect that "any extraordinary" profits realized from "stocks or other property" belong to the corpus, was no doubt the result of the English cases which had been decided when the text was written; but later cases have greatly modified, if not reversed, it, while it has been distinctly repudiated in Pennsylvania. *Appeal of Earp, supra.* * * *

These suggestions sufficiently indicate the trend of decision, and the principle which should settle the question raised here. The gift being, not of specific property, but general and residuary in its character, the measure of the remainder is its value at the date of testator's death, and that of the life estate the increase thereafter. It follows that the amounts invested in mortgage, which were admittedly parts of the estate at testator's death, should be treated as the corpus, and the residue in the hands of the trustees, arising from foreclosure, as belonging to Mrs. Leech, as "income and profit," within the "purpose and intent" of Mr. Park's will.

The same distinction as was pointed out between *Park's Estate* and *Graham's Estate* is present as between the instant case and *Nirdlinger's Estate*, that is, in *Nirdlinger's Estate* the life beneficiary was entitled to receive the "rents, issues, income, dividends and revenue" in the profits, while in the instant case the life tenant was entitled to receive the "rents, issues, income and profits."

From our review of the cases we conclude that under the prevailing rule in the Commonwealth of Pennsylvania the petitioner herein, as life tenant of the testator's residuary estate, was entitled to all of the profits derived from the sale of the assets of the estate over and above their value at the date of the testator's death.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*