## Quay's Estate.

*Wills—Trust estates—Stocks—Increase on sale—Income.*

Where a testator directed that his estate should be converted, and distributed as cash, and created a trust fund for the benefit of certain persons for life and the trustees of such fund took certain stock in lieu of cash upon the distribution of the testator's estate, and subsequently realized a profit upon the sale thereof, the profit so realized was not part of the corpus of the trust fund, but was distributable as income.

Argued Feb. 2, 1916.    Appeal, No. 37, Oct. T., 1916, by Richard R. Quay and The Union Trust Company of Pittsburgh, Trustees, from decree of O. C. Beaver Co., Dec. T., 1914, No. 55, dismissing exceptions to adjudication, in Estate of M. S. Quay, Deceased.    Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER,, FRAZER and WALLING, JJ.    Affirmed.

Exceptions to adjudication.

Upon the audit of the account, HOLT, P. J., filed the following opinion:

M. S. Quay died on the twenty-eighth day of May, 1904, having first made his last will and testament bearing date the twenty-seventh day of May, since his decease duly probated and remaining of record in the Register's Office at Beaver, in Will Book N, page 369, wherein and whereby, among other things, he provided as follows:

"FIFTH. All of the rest and residue of my estate, real, personal and mixed, shall be sold by my executors hereinafter named, and converted into money, and my executors shall pay therefrom all my just debts and liabilities.

"SIXTH. After payment of my debts and liabilities, my estate shall be divided into five equal parts, one of which parts I give and bequeath to my son Richard R. Quay, subject to the payment by him to Annie Pene-

baker, of the sum of ten thousand dollars in cash.   I
also give and bequeath one of said portions to my daugh-
ter Coral Quay, and another to my daughter Susan W.
Quay.

"SEVENTH. I hereby give and bequeath to my execu-
tors and trustees hereinafter named one of said five
equal parts in trust to invest and collect the incomes
and profits arising therefrom, and to pay said income
and profits to my son A. G. C. Quay, so long as he shall
live; but with this restriction, that the total amount
paid in any year to my said son together with all such
other incomes as he may have from other sources shall
not exceed the sum of four thousand dollars.   And I
hereby direct that no part of the said trust fund, or of
the incomes or profits arising therefrom shall be subject
or liable for any debts now existing or which may be
hereafter contracted by my said son, A. G. C. Quay.
And I further direct that in case the incomes and profits
arising from said trust fund together with the other
incomes of my said son A. G. C. Quay would amount to
more in any one year than said sum of four thousand
dollars, the excess shall be invested by my executors and
trustees, and shall be added to the principal of said trust
fund.   At the death of my said son, A. G. C. Quay, I di-
rect my executors and trustees to pay to A. G. C. Quay
and Esther Dempsey Quay, the two children of my said
son A. G. C. Quay, the sum of twenty thousand dollars;
and the balance of said trust fund shall be divided
equally between my children then living."

Under the seventh clause of said will the executors
and trustees under the said will received in the distribu-
tion of the estate of the said M. S. Quay two hundred
forty shares American Tobacco common stock at the
appraisement price of fifty-four thousand dollars.   From
time to time the trustees made sales of the said stock
at different prices, and realized therefrom the sum of
$36,388.10 in excess of the value at which they accepted
the same; and from other sources the said trustees have

in their hands income and profits derived from the estate and coming into their hands under the seventh clause of said will the sum of $10,775.45, making in all the sum of $47,163.55. The trustees maintain that the profits realized from the sale of the said stock belong to the corpus of the trust fund; while counsel for A. G. C. Quay maintain that this sum is income and profits within the meaning of the will, and that this amount, together with the $10,775.45 should now be distributed to the next of kin of the said M. S. Quay, for the reason that the provision in the will for the accumulation of income and profits offends against the provisions of the Act of April 18, 1853, P. L. 503.

It is virtually conceded by counsel on both sides of the case that the provision of the will for the accumulation of profits is in contravention of the provisions of the Act of 1853.

The gift of the balance of the trust fund after the payment of twenty thousand dollars to the children of A. G. C. Quay at his death is contingent upon the other children of M. S. Quay being alive at the date of the death of the life tenant, A. G. C. Quay; until the happening of that event it could not be known who would be entitled to take. The interests of these residuary legatees are clearly contingent, and in such circumstances the income and profits from the trust fund go to the next of kin of M. S. Quay, including the profits derived from the sale of the tobacco stock, unless such profits constitute a part of the corpus of the estate. The important question, therefore, for decision is whether the amount realized from the sale of the said stocks over and above the price at which they were taken over by the trustees belongs to the corpus of the estate, or is profits within the meaning of the will.

Counsel for the exceptants in support of their contention cite Park's Estate, Leech's App., 173 Pa. 190, in which it was held "that a profit realized by foreclosure of a mortgage and a resale of the property bought in by

the trustees, was 'income and profits' within the meaning
of the will and belong to testator's daughter, and not to
the remainderman." As a general rule, a sum received
over and above the appraisement price of stocks belongs
to the corpus and is not to be treated as profits. How-
ever, in any case reference must be had to the language
of the will in dealing with such property. In Park's
Estate, supra, the language of the will is in substance
the same as the language of the will under considera-
tion. In that case the testator devised and bequeathed
the residue of his estate both real and personal to his
executors in trust, " 'to receive and collect the rents of
the real estate hereby devised to them in trust, and the
income and profits of the personal estate, hereby be-
queathed to them in trust,' (after deducting taxes and
expenses and some minor annuities,) 'to pay the residue
of the net income arising from said real and personal
estate, held by them in trust,' into the hands of his
daughter Margaretta, yearly and every year during her
natural life, the corpus of the estate to be paid to her
children after her death."

The auditing judge held that the net profits realized
from the sale of the properties which had been purchased
for the protection of the estate belonged to the corpus of
the trust estate. Exceptions to the adjudication were
overruled, Over, J., filing the opinion of the court, and
Hawkins, P. J., filing a dissenting opinion. In the dis-
senting opinion Judge Hawkins said:

"If the gift had been of specific property for life with
remainder over, it may be conceded that Mrs. Leech
would have had no right to share in the proceeds of its
sale, for such proceeds when realized would simply have
been the measure of value of the specific property which,
by the terms of the will, those in remainder would other-
wise have had a right to demand at her death. The gift,
however, being general, gave those in remainder no title
to any specific property, but implied conversion into
cash, which referred the value of the corpus to the date of

the testator's death.  Had the gift to Mrs. Leech been legal as well as equitable, that value would have been the measure of her liability to those in remainder and the source of the income and profits beneficially intended for her.   Investment and reinvestment would have been in her control and for her sole benefit.   Those in remainder would have had no interest further than the safety of this corpus and its payment at her death.   This being conceded, why should the mere separation of legal and equitable estate imply any change in her beneficial estate?......In Earp's App., 28 Pa. 368, 374, which is the leading case, it was held that the surplus profits earned prior to testator's death on stocks were essentially part of the stock itself and principal; while those earned after, whether declared in the form of cash, scrip or stock, belonged to the life donee.   'In the case before us,' said the Chief Justice, the testator has not made a bequest of the stock itself to appellant; on the contrary he has given them only the income for life.   Their interest commences after the death of testator.   They have no right whatever to claim the income which had accumulated before his death.......It is equally clear that the profits arising since the death of the testator are income within the meaning of the will, and should be distributed among the appellants.' "

Judge HAWKINS further said:

"The rule, as quoted from Hill on Trustees, to the effect that 'any extraordinary' profits realized from 'stocks or other property' belongs to the corpus was no doubt the result of the English cases which had been decided when the text was written; but later cases have greatly modified, if not reversed, it; while it has been distinctly repudiated in Pennsylvania: Earp's Appeal, supra," etc.

Concluding, Judge HAWKINS said:

"The gift being, not of specific property, but general and residuary in its character, the measure of the remainder is its value at the date of testator's death, and that of the life estate the increase thereafter; it follows

that the amounts invested in mortgage, which were admittedly parts of the estate at testator's death, should be treated as the corpus; and the residue, in the hands of the trustees arising from foreclosure as belonging to Mrs. Leech, as 'income and profit' within the 'purpose and intent' of Mr. Park's will."

The Supreme Court sustained the position of Judge HAWKINS.

In the case under consideration there is no gift of stocks as such. The testator intended his estate, after making certain bequests and devises, to be considered as cash as of the time of his death; for he provides in the fifth section of his will, (which embraces the estate passing under the seventh clause), "all of the rest and residue of my estate, real, personal and mixed, shall be sold by my executors hereinafter named, and converted into money," etc.

In the seventh clause of his will he makes no bequest of any specific property, but he simply disposes of the one-fifth of the proceeds of the sale of his property after the payment of his just debts and liabilities, by providing a trust fund for the specific purposes therein mentioned; and at the death of A. G. C. Quay he gives out of the said trust fund twenty thousand dollars to A. G. C. Quay and Esther Dempsey Quay, children of the said A. G. C. Quay, and the balance of the said trust fund he directs to be divided equally between his children then living. He directs his executors and trustees "to invest and collect the incomes and profits" arising from the one-fifth of his residuary estate, "and to pay the said income and profits to my son A. G. C. Quay, so long as he shall live;" etc., and further directs that "in case the incomes and profits arising from said trust fund......would amount to more in any one year than said sum of four thousand dollars, the excess shall be invested by my executors and trustees," etc. It is, therefore, clear from the language of this will that M. S. Quay intended that the trust fund should be treated

as cash in the hands of his trustees at the time of his decease, and that the income and profits therefrom, not to exceed four thousand dollars a year, should be paid to A. G. C. Quay during his natural life; and that any surplus of such income and profits should be added to the corpus of the estate. Such surplus being an accumulation of profits in contravention of the terms of the above-mentioned statute is now distributable among the next of kin of the testator.

We are, therefore, of the opinion that the income and profits now in the hands of the said trustees, amounting to $47,163.55, after deducting the expenses of this proceeding, should be distributed to and among the five children of the deceased, taking into consideration in such distribution the four thousand dollars payable annually to the said A. G. C. Quay.

The court dismissed the exceptions. Richard R. Quay and The Union Trust Company of Pittsburgh, Trustees, appealed.

*Error assigned* was in dismissing the exceptions.

*Samuel McClay,* with him *John J. Heard* and *Reed, Smith, Shaw & Beal,* for appellants.

*Walter Lyon,* for appellees.

PER CURIAM, March 20, 1916:

The excess realized by the trustees in this estate over the value of the American Tobacco Company stock at the time of the testator's death formed no part of the corpus of that portion of his estate placed in trust for his son, A. G. C. Quay, but was income or profit, not to be held for the remaindermen: Stokes' Estate (No. 1), 240 Pa. 277.

The decree is affirmed on the opinion of the learned court below directing it to be entered, the costs to be paid out of the fund to be distributed.