**Jordan Estate**

*George Hay Kain, Jr.,* for accountant.

*Martin B. Ebbert* and *William S. Eisenhart, Jr.,* for York County Academy.

*Ralph F. Fisher* and *W. W. Van Baman,* for Protestant Episcopal Church.

GROSS, P. J., July 28, 1952.—The second account of York Trust Company, surviving trustee of a fund for the use and benefit of the Rector, Church Wardens and Vestrymen of the Protestant Episcopal Church of St. John, at Yorktown, and the Trustees of the York County Academy, under the last will and testament of John C. Jordan, late of the City of York, York County, Pa., was filed in the office of the clerk of the Orphans' Court of York County, on April 2, 1952, and, after due and legal advertisement, was presented to this court for audit and confirmation on May 7, 1952, continued for the purpose of hearing arguments, and closed finally July 9, 1952.

A claim was presented by the Rector, Church Wardens and Vestrymen of the Protestant Episcopal Church at Yorktown, with concurrence by the York County Academy, for an amount, less expenses, to be awarded as income, and which is equivalent to the gain in the value of the corpus of the trust, resulting from profits on conversion of assets.

John C. Jordan, decedent, died September 6, 1908, testate, leaving a will in writing dated April 25, 1908, which was duly admitted to probate in the Office of the Register of Wills of this County, on September 15, 1908, where the will remains fully of record in Will Book 2-V at page 225.

The pertinent portion of the will creating this trust is item sixteenth which item is as follows:

"Item sixteenth. I give and bequeath all the rest, residue and remainder of my property and estate to Horace Keesey, Charles H. Bear and Richard E. Cochran, all of the said City of York, and to their successors in the trust, forever, in trust to carefully invest the same and to change the investment and to reinvest the said fund from time to time as and when circumstances shall require and out of the interest and income which they shall receive to pay annually first, the cost and expense of administering the trust; second, the cost and expense of keeping the lot in Prospect Hill Cemetery of which the members of my family and I shall be buried and the tomb stones thereon erected in good condition, order and repair; third, to pay two-thirds of the remainder of said annual interest and income to 'The Rector, Church Wardens and Vestrymen of the Protestant Episcopal Church of St. John at Yorktown' yearly and every year forever; fourth, to pay the remaining one-third of the remainder of said annual interest and income to 'The Trustees of the York County Academy' provided however that in case the said last mentioned corporation shall be dissolved or the York County Academy shall go out of existence as an academy or college or the said 'The Trustees of the York County Academy' shall fail or neglect for five consecutive years to maintain a school in which the English language, Latin, Greek, Mathematics and the Natural Sciences shall be taught during at least nine months in each and every year, the said share or portion of the remainder of said annual interest and income shall be forfeited by the said 'The Trustees of the York County Academy' and in that event the whole of the said remainder of the said annual interest and income arising from the said rest, residue and remainder of my estate in the hands or

possession of my said Trustees or their successors shall be paid by them to 'The Rector, Church Wardens and Vestrymen of the Protestant Episcopal Church at Yorktown' yearly and every year forever.

"Whenever any vacancy shall happen in the number of said trustees I hereby authorize and empower the Orphans' Court of York County to appoint a proper person to fill such vacancy upon the petition of the corporation or the corporations entitled to receive the remainder of said annual interest and income.

"Lastly, I hereby nominate, constitute and appoint the above named Horace Keesey, Charles H. Bear and Richard E. Cochran to be the Executors of this my last will and testament."

The charitable beneficiaries of this trust will be referred to hereinafter as the "church" and the "academy."

### Historical Facts

1. Decedent died September 6, 1908, unmarried and without issue, leaving a will dated April 25, 1908, which was duly probated on September 15, 1908, and letters testamentary thereon granted to Horace Keesey, Charles H. Bear and Richard E. Cochran, the executors therein named and also the named trustees of the trust created of decedent's residuary estate.

2. On September 25, 1908, the executors filed an inventory and appraisement of decedent's personal property, consisting of a bank deposit, bonds, stocks, mortgages and promissory notes, appraised at $117,231.16, and furniture appraised at $470.50, making a total appraisement of $117,701.66.

3. On August 11, 1909, the executors filed their first and final account in the register's office, which was confirmed nisi by the orphans' court on October 4, 1909, and in which they charged themselves with the amount of the appraisement of personal property, proceeds from the sale of real estate, and with accretions

arising from the sale of certain appraised assets, and interest and income received thereon, making the total debit side of their account the sum of $161,825.48. Against this balance credits were taken for the payment of expenses of administration, taxes, interest and income to the beneficiaries of the trust, and the payment of certain legacies amounting to the sum of $23,474.37. leaving in the hands of the accountants a balance of $138,351.11. (See orphans' court, account docket, no. 39, page 580.)

4. The Orphans' Court of York County appointed William A. Miller, Esq., to audit the executors' account and, on January 21, 1910, he filed his report in which, after awarding the cost of audit, claims for taxes, etc., there was left a balance of $135,928.01. From this last named balance, there was awarded interest and income to the church and the academy in the total sum of $6,262.52, leaving a balance of $129,665.49, which last named balance, according to the notes of testimony filed by the auditor, consisted in part of the unsold securities of the appraised face value of $103,464.28, and cash. Apparently none of the securities were legal investments for trust purposes. This balance on the account of the executors of $129,665.49 and in its then present form was awarded by the auditor to the trustees and represented the corpus of the trust as of January 21, 1910. (See orphans' court, docket 4-H, page 603.)

5. No exceptions were filed to the report of the auditor, and the same became confirmed absolutely by the court. The trustees accepted the award and the cash intact value of the corpus of the trust became fixed at $129,665.49 as of January 21, 1910.

6. On May 16, 1914, Horace Keesey, Charles H. Bear and Richard E. Cochran, trustees, filed their account in the Orphans' Court of York County, in which they charged themselves with the award made

to them, to wit, the sum of $129,665.49, as the intact value of the corpus of the trust. They also charged themselves with interest and income received in the amount of $29,951.00, or a total debit in the sum of $158,816.59. This account shows credits for expenses and distribution of income to the church and the academy in the total sum of $29,951.10, leaving a balance in the trustees' hands, as the corpus of the trust in the sum of $128,914.07. The balance as shown by the trustees' account is made up of various securities, without substantial change from the award made to them and practically all of which appear to be non-legal investments for trust purposes. (See orphans' court, account docket, no. 44, page 296.)

7. No exceptions were filed to the account and the same was confirmed by the court. No auditor was appointed to audit the account and distribute the balance thereon. The intact value of the trust therefore became fixed at the cash value of $128,914.07, as of May 16, 1914.

8. On August 3, 1914, Horace Keesey and Richard E. Cochran, two of the trustees, petitioned the Orphans' Court of York County, asking to be discharged as trustees. They were discharged by the court and on the same day, to wit, August 3, 1914, upon petition of the church and the academy, York Trust Company of York, Pa., was appointed a successor trustee in their stead. In their petition, the church and the academy acknowledged that the intact value of the corpus of the trust amounted to the sum of $128,914.07.

9. No further accounting of this trust was filed until April 12, 1930, when Charles H. Bear and York Trust Company, successor trustee, filed their account, in which they charge themselves with the amount awarded to them as the corpus of the trust, at the intact value or the sum of $128,914.07, and with accretions and profits realized thereon, in the sum of

$5,797, making a total principal debit of $134,711.56, and a net balance of principal of $134,223.03 made up of securities listed on page 2 of the account. The trustees also filed an income account, consisting of interest and income received by them in the total sum of $117,-523.10, with credits thereagainst for the whole amount for costs of administration and for payments of interest and income, made to the church and the academy, thus leaving no balance on the income account. (See orphans' court, account docket, no. 56, page 288.)

10. The account was confirmed nisi by the court on May 12, 1930, and McClean Stock, Esq., was appointed auditor to audit the account and make distribution. The auditor filed his report on August 8, 1931, which was confirmed nisi at that time, in which report the auditor found that the net accretion or profits, after adjustments, amounted to the sum of $2,390.60, which he awarded in the form of York Water Company stock to the church, 152⅔ shares, and to the academy, 76⅓ shares, valued at the sum of $2,590.60 as income, which came to the trustees by virtue of investments made or held by the trustees in York Water Company stock and fixed the intact cash value of the securities then in the trust constituting the corpus thereof, and listed on page 2 of the trustees' account, at the sum of $131,632.43. (See orphans' court, docket 6-C, page 616.)

11. The next, the instant account, already referred to in this report, was filed by the York Trust Company, the surviving trustee (Charles H. Bear, the other trustee, having died) in which the first debit item appearing in its principal account is the balance on the former account of $134,711.56, and also charges itself with gain from sale of securities in the amount of $28,591.85, making total principal debits of $162,-814.88. This account takes credit against the principal debits, including the value of the 229 shares of

8

York Water Company stock distributed to the church and academy, fixed by McClean Stock, auditor, at $2,590.60, the total sum of $3,449.42, leaving a principal balance of $159,365.46, which balance is made up of investments, prima facie legal for trust purposes and of the cash value of $159,365.46, as listed on the trustee's instant account. The difference between $159,365.46 and $131,632.43, the intact value fixed by McClean Stock, auditor, in 1931, is the sum of $27,733.03, which sum represents increment and profits from investments realized between the filing of the 1930 account and the 1952 account.

12. Under the authority of Jordan's Estate, 310 Pa. 401, and the testimony of Dr. Lester Johnson, submitted at the hearing, we find that the church and the academy are existing institutions under charters granting to each of them the right of perpetual existence and that the academy is presently functioning within the meaning and terms of the trust provisions of decedent's will.

On June 16, 1952, counsel for the church and the academy filed a written statement in which claims are made by them in the proportion of two-thirds to one-third, respectively, for $29,709.97 (due to an error in subtraction, the amount should be $29,699.97) being the difference between $129,655.49, the intact value of the corpus of the trust fixed by William A. Miller, auditor, in his report of audit of the first and final account of the executors, filed on June 21, 1910, and $159,365.46, being the net balance on the principal of the instant account of the trustees and with which amount the trustees charge themselves as being the cash value of the corpus of the trust, as shown in the list of securities on page 5 of their account.

It is the contention of the church and academy that this is a perpetual trust with no gift over in the event

of its possible termination and therefore there is no apportionment to be made of the gains or profits between the beneficiaries. and the corpus of the trust and that distribution of these gains, profits and accretions to principal comes to them as interest and income within the reasonable purview of testator's intent in directing that "the interest and income" from the trust should be paid to them after the proper expenditures have been made for the upkeep of the family burial plot.

### Discussion

The attitude of the accounting trustee with respect to these claims is neutral. It is neither adverse nor favorable to the claims and is content to let the whole matter rest in the lap of the court for its decision and abide thereby. But, notwithstanding the trustee's attitude, we are bound to decide the issues here involved according to law.

If, to allow the claims of the church and academy would result in a distribution of any part of the corpus of the trust, we would be exceeding our powers to do so; for, by so doing it would be tantamount to a pro tanto termination of the trust. A trust to pay the income to a charitable institution forever is an active trust which may not be terminated either in whole or in part by the demand of the institutions that the principal or any part thereof be paid to it, even with the consent of the trustee: Unruh's Estate, 248 Pa. 185; Baughman's Estate, 281 Pa. 23; Bowman's Estate, 332 Pa. 197; Yeager Estate, 354 Pa. 463.

The issue here presented is one of involved legal principles. The industry and assiduity of able counsel and, we may also add, of the court in making a research of the decisional law did not yield a single case of the appellate court of like, or even similar facts, to guide us to an uncontroversial conclusion. The re-

statement of the law, so far as we are able to discern, is also void in the announcement of any principle with direct application to the solution of our problem.

We must, therefore, rely upon well-established general principles of the administration of trusts to make our decision.

In Knox's Estate (No. 1), 328 Pa. 177, 182, the Supreme Court laid down the following rule:

"In apportionment cases, under our settled rules, the rights of the parties must first be determined in the light of the intent of the creator of the trust, whenever it is at all possible to ascertain his purpose from the instrument creating the trust and the surrounding circumstances. See Robinson's Trust, 218 Pa. 481, 486; Boyer's Appeal, 224 Pa. 144, 153. In considering these cases this basic rule must guide and control, and it is then that many cases, which on their surface appear difficult of solution, become easy to solve."

In Nirdlinger's Estate, 290 Pa. 457, we quote from the Supreme Court's opinion as follows:

"The testator gave the income of his estate to the life tenants. 'Income' may be defined as a gain which proceeds from labor, business or property of any kind, the profits of commerce or business. It includes the return earned by capital stock. It has a broader meaning than the term 'dividend'; it includes profits. We said in Quay's Estate, 253 Pa. 80, that profits included not only the accumulations of earnings, but the advances or increment in value. It is not necessary to include the latter in the definition. What the testator did was to give to the life tenant all this income. It included all the earnings which his membership in the company or ownership in stock are responsible for, or would bring about, but not the stock's earning power. That inheres in the stock."

Let us apply the above rules to the instant case.

Testator was an intelligent and successful business man here in the City of York and, through industry and perseverance had accumulated a rather large estate. He was unmarried and left no descendants to survive him.

He was closely connected with the church and academy and in the creation of the trust of his residuary estate, without making any gift over of the remainder, he clearly indicated by his will that the church and the academy were not only the chief, but the sole, objects of his bounty. All possible doubt about this intent is expelled by the fact that on four occasions in his will he directs the payment of "the annual interest and income" to be made to these two charities after making proper provision for the care of the family burial plot. We cannot believe that this testator intended the building up of a large fund for the benefit of a charity or charities of which he had no knowledge and with which he had no connection and which perhaps were not in existence at the time he executed his will and to whom under the cypres doctrine, as laid down by the Supreme Court in Williams Estate, 353 Pa. 638; Craig Estate, 356 Pa. 564, and Kensington Hospital for Women Case, 358 Pa. 458, the interest and income would inure in the event of the nonexistence of the church and academy when it would be no longer possible for them to benefit by the trust.

It has frequently been held and firmly established in Pennsylvania that, in the case of an individual, an absolute gift of income, without limitation as to time or amount, is a bequest of the corpus of the fund from which the income is derived. It is a gift in perpetuity and carries the fund itself: McKinstry's Estate, 296 Pa. 185, and Carmany Estate, 357 Pa. 296. In the latter case cited, we find the decisions of the Supreme Court collated in support of this doctrine.

This doctrine is true whether the estate in the gift be a legal or equitable estate and in the latter case the trust would be terminated and the corpus given to the beneficiary: McKinstry's Estate, supra; Park's Estate, 173 Pa., at page 193.

However, we have already stated that a perpetual trust for a charity cannot be terminated and therefore the integrity of the intact value of the corpus of a charitable trust must be maintained and preserved in the hands of a trustee but, as to income and profits of this trust a different situation arises and we hold that testator, by his frequent use of the words "interest and income", and in view of all the other surrounding circumstances, intended that these two charities, but subject to the payment of the costs of the upkeep of the family burial lot and the maintenance and preservation of the intact value of the corpus of the trust, should receive all the profits and increments arising from all investments of corpus.

We think this conclusion is in harmony with the fundamental principle that an instrument creating a trust for charity should receive as broad and liberal construction as it will reasonably permit so as to fully carry out what seems reasonable to appear therefrom to be the true intention of its creator: Lehigh University v. Hower, 159 Pa. Superior Ct. 84; Knox's Estate, supra. Our conclusion is also in harmony with the provisions of the Acts of April 26, 1855, P. L. 328, sec. 10, and May 23, 1895, P. L. 114, sec. 1, 10 PS §13, wherein the legislature directed that the orphans' court shall, "by its decrees to carry into effect the intent of the donor or testator, (of a charitable trust) so far as the same can be ascertained and carried into effect consistently with law or equity."

The question now arises: From what date shall these profits and increments be allowed?

The direction of testator touching these and all the trust properties is under the broad general language as to the rest, residue and remainder of his property; nothing therein, so far as this question is concerned, relates to any specific devise or bequest in favor of any devisee or to any specific property to be held by the trustee or for the benefit of either the church or the academy.

Therefore, the principle which governs (except in the instant case to the extent hereinafter pointed out) is stated in Park's Estate, 173 Pa. 190, and is applicable, to wit:

"The gift . . . being general gave those in remainder (in the instant case there are no remaindermen) no title to any specific property, but implied conversion into cash, which referred the value of the corpus to the date of testator's death."

The foregoing principle is reaffirmed in Quay's Estate, 253 Pa. 80, and Blair's Estate, 71 Pitts. L. J. 159; Lowell Estate, 98 Pa. Superior Ct. 22; Chalfant's Estate, 294 Pa. 331; Flinn's Estate, 310 Pa. 206; King Estate, 355 Pa. 64; Waterhouse's Estate, 308 Pa. 422.

In the instant case, we must consider the intact value of the corpus of this trust as cash and as of testator's death, because of the absolute legal duty of the trustees to convert into cash. As we have already pointed out, the church and the academy were ordinarily entitled to all profits arising after testator's death. But, in the instant case, we think the rule does not apply in its entirety and for the reason that these two charities never made any claim for the profits and increment until 1952, when the instant account was filed and came up for audit.

At the prior audits of accounts and without any exceptions or objections filed thereto, these charities permitted the profits and increments to become inte-

grated into the corpus and to become of the warp and woof of the corpus of the trust.

The former audits of accounts are therefore res adjudicata and the church and the academy can no longer make any claim therefor. See Bullitt's Estate, 308 Pa. 413; Kellerman's Estate, 242 Pa. 3.

In determining the amount to be awarded to these charities, we will go back of the report of audit of McClean Stock, auditor, filed in 1931, wherein he fixed the intact value of the corpus of this trust at $131,-632.43, which amount we subtract from the balance on the instant principal account of $159,365.46, giving us the sum of $27,733.03, as the gains, profits and increment, and to which we hold these two charities are entitled. This sum, less accountant's commissions of $1,386.65, will be awarded to the church and academy in the ratio of two-thirds to the church and one-third to the academy.

We submit the following

### Schedule of Distribution

#### Principal

| | | |
|---|---|---|
| Balance on the account .................... | | $159,365.46 |
| Awards are made in accordance with our findings and conclusions, and as follows: | | |
| To York Trust Company, Accountant, as compensation ...........................$ 1,386.65 | | |
| To The Rector, Church Wardens and Vestrymen of the Protestant Episcopal Church at Yorktown, 2/3 of $26,346.38 ............ 17,564.26 | | |
| To the Trustees of the York County Academy, 1/3 of $26,346.38 ...................... 8,782.12 | | |
| | | 27,733.03 |
| Leaving balance .................... | | $131,632.43 |
| Which is awarded in manner and form as constituted | | |
| To York Trust Company, Trustee, in trust, for further administration, and to pay the interest and income therefrom in accordance with Item Sixteenth of decedent's will .................................. | | $131,632.43 |

*Decree*

And now, to wit, July 28, 1952, it is hereby ordered, adjudged and decreed that the second account of York Trust Company, surviving trustee of a fund under the last will and testament of John C. Jordan, late of the City of York, York County, Pa., is confirmed absolutely, and it is further ordered, adjudged and decreed that the accountant pay the distributions and awards to the parties entitled to receive the same as set forth in the foregoing schedule of distribution.

This decree is entered nisi and, in the absence of exceptions filed thereto within 10 days from the date hereof, the same shall become final, as of course.