## Rufe Estate

*Claire G. Biehn,* for trustee.

*Donald B. Smith,* for guardian ad litem.

BIESTER, J., July 2, 1954.—Belle Rufe, late of the Borough of Quakertown, this county, died on May 5, 1930, leaving a last will and testament providing for certain specific and pecuniary bequests followed by the creation of a trust for the benefit of the decedent's grandson, Raymond Rufe. The item in the will, establishing the trust, is in the following language:

"Item: I give and bequeath unto the Quakertown Trust Company of the Borough of Quakertown, County of Bucks and State of Pennsylvania, the sum of Thirty-four Hundred Dollars, in trust, nevertheless, to invest the same and keep the same invested in such legal securities as it may deem safe and proper and to collect the interest and income thereof, and after deducting all proper charges, to pay the net income thereof unto my grandson Raymond Rufe for and during the term of his natural life, without the same, either principal or income, being in any manner or form of proceeding subject to or liable for his present

or any future debts, contracts or engagements, the interest and income alone to be paid to him from time to time as the same may become due and payable, and not by any way of anticipation. His receipts shall be sufficient discharges for the same; should, however, the said Raymond Rufe desire to purchase real estate for his home I authorize the Trustee aforesaid to invest the said sum or any part thereof in such real estate provided the President of the said Quakertown Trust Company, Trustee as aforesaid, shall deem it a good and safe investment, and at and immediately upon the death of the said Raymond Rufe, I give, devise and bequeath the said sum of Thirty-four Hundred Dollars or the security represented at the time, to my great-granddaughter, Anna May Rufe, the daughter of the said Raymond Rufe, if she be living; should the said Anna May Rufe not be living then and in that event I give, devise and bequeath the sum of Thirty-four Hundred Dollars or the security represented by such investment, if the same is invested, to my son Claude T. Rufe and my daughter Anna Gussman or their heirs, share and share alike."

Under the authority contained in this clause, Raymond Rufe, having expressed a desire that the trustee invest a part of the corpus in the purchase of a residence for his use, the sum of $2,500 of the corpus of $3,400 was used for this purpose, title to the premises being taken in the name of the Quakertown Trust Company as trustee.

The trustee has presented a petition under the Revised Price Act of June 7, 1917, P. L. 388, seeking our authorization to sell the messuage and tract of land in question for the sum of $21,000; pending final distribution of the fund to permit the trustee to invest the sum of $13,300 in another home for Raymond Rufe, title to be in the trustee; a determination by the court as to the manner in which the proceeds of

the sale shall be distributed as between principal and income, and the appointment of a guardian and trustee ad litem to represent the interests of the unascertained or unascertainable contingent remainderman.

We have authorized the sale, made the appointment of the guardian and trustee ad litem and permitted the investment of the sum of $13,300 for the purpose hereinbefore specified. The sole question to be dealt with in this opinion is the allocation of the profits derived from the sale of the real estate involved.

Counsel for the life tenant asks that we find that the very substantial profit derived from the sale be allocated to income. The guardian and trustee ad litem contends that the proceeds of the sale belong to principal.

We think there can be no question but that any increased value due to the enhancement of the original value of property held by a trustee for the benefit of a tenant for life, followed by a remainder is, in Pennsylvania, usually deemed to be an accretion and that such increase becomes a part of the corpus of the estate for the benefit of the remainderman: Hubley's Estate, 16 Phila. 327; Eisner's Estate, 175 Pa. 143; Graham's Estate, 198 Pa. 216; Kemble's Estate, 201 Pa. 523; Neel's Estate (No. 2), 207 Pa. 446; McKeown's Estate, 263 Pa. 78; Nirdlinger's Estate, 290 Pa. 457; Waterhouse's Estate, 308 Pa. 422; Lewis Estate, 351 Pa. 576; Leech's Estate, 4 D. & C. 1; Cope's Estate (No. 1), 50 D. & C. 189; Dempwolf's Estate, 57 D. & C. 271; Oberly's Estate, 39 Berks 207.

Although not directly applicable to the present trust (King's Estate, 355 Pa. 61; Crawford's Estate, 362 Pa. 458; Jones' Estate, 377 Pa. 473), statutory recognition of the general principle hereinbefore set forth is contained in the Principal and Income Acts of May 3, 1945, and July 3, 1947, P. L. 1283. Section 3 of the latter act (20 PS §3470.3(2)) contains the following provisions:

"All receipts of money or other property paid or delivered as the consideration for the sale, or other transfer, not a leasing or letting of property, forming a part of the principal, or as a repayment of loans or in liquidation of the assets of a corporation, or as the proceeds of property taken in eminent domain proceedings, where separate awards to tenant and remainderman are not made, or as proceeds of insurance upon property forming a part of the principal, except where such insurance has been issued for the benefit of either tenant or remainderman alone, or otherwise as a refund or replacement or change in form of principal, shall be deemed principal unless otherwise expressly provided in this act. *Any profit or loss, resulting from any change in form of principal, shall enure to or fall upon principal, unless otherwise expressly provided in this act.*" (Italics supplied.)

Contrary to this general rule are Park's Estate, 173 Pa. 190, and to a limited degree, Quay's Estate, 253 Pa. 80.

In Park's Estate, supra (1896), testator devised and bequeathed his residuary estate in trust, the trustee to receive and collect the rents of the real estate and the income and profits of the personal estate and, after deducting taxes and expenses and certain annuities, to pay the residue of the net income arising from the real and personal estate to his daughter during her life, with remainder to her children. The trustees invested a portion of the trust fund in two mortgages, which were later foreclosed and bought in by the trustee at sheriff's sale. This real estate was sold by the trustee at a considerable gain during the lifetime of the daughter, who claimed the gain as income. The auditing judge, Over, J., of Allegheny County, dismissed her claim but Hawkins, P. J., disagreed, and, the court being equally divided, the decree of Over, J., stood as the final decree. The Supreme Court reversed in a brief opinion adopting the dis-

senting opinion of Hawkins, P. J. Even in this case, the adopted opinion of Hawkins, P. J., states as a principal that:

"If the testator had manifested an intent that the fund should be invested in the purchase of lands and thereby work a conversion, any increase in value of the lands must, it is conceded, have inured to the benefit of the remainder."

Graham's Estate, supra (1901), subsequently decided by the same court, appears to be in direct conflict with Park's Estate. In that case it was held that where a trustee invests trust funds in bonds and subsequently sells the bonds at an advance, investing the proceeds in other securities, the profit on the bonds becomes a part of the principal. Judge Over agrees (page 221), that: "It must be conceded it is difficult to distinguish this case in principle from Park's Estate, 173 Pa. 190." He refers to a possible distinction, (page 222), in the following language:

"It appears, however, from the opinion [in Park's Estate] that there was a misapprehension as to the provisions of the will in that case, as it is quoted as giving both the income and profits to the tenant for life, and as the income alone is given here, it may be for this reason the case is not in point."

Shortly after Graham's Estate and Kemble's Estate, supra (1902), involving the disposition of profits derived from the sale of stock, and Neel's Estate, supra (1904), dealing with the allocation of profits from the sale of real estate, were decided and in both cases the court followed the theory of Graham's Estate, holding the corpus to be entitled thereto.

Quay's Estate, supra (1916), is decided on the authority of Park's Estate, but cannot be said to be contrary to Graham's Estate in that the court lays great stress on the wordage of the will, including the use of the word "profits". The court agrees that (page 83):

"As a general rule, a sum received over and above the appraisement price of stocks belongs to the corpus and is not to be treated as profits."

McKeown's Estate, supra (1919), holds that where stock is sold which belongs to the principal of the trust estate, all of the proceeds belong to the principal.

In Leech's Estate, supra (1923), Gest, J., of the Orphans' Court of Philadelphia County, in a very carefully considered opinion, discusses the conflict arising out of the cases hereinbefore cited. He refuses to follow the reasoning of Park's Estate, being quite critical thereof, but accepts Graham's Estate as his authority. As to Quay's Estate, he says, (page 6): "It stands on its own facts."

It does not appear to be necessary to discuss individually the later cases heretofore cited. Suffice it to say, that the basic view expressed in Graham's Estate appear in recent years to have been accepted by our courts, and we regard such views as now controlling.

In referring to the various cases herein contained we have made no attempt to distinguish between those in which shares of stock form a part of the trust estate and those in which real estate forms the corpus, as there appears to be no distinction in principle. Neither have we referred to the Pennsylvania rule of apportionment, as this rule obviously has no application to the facts of such a case as is now before us. We may say, however, that the purpose of this rule of apportionment is to preserve for the principal the intact value of stock at testator's death, *plus all subsequent capital increases*, giving to the tenant, in certain instances, earnings since the date of the testator's death: Jones' Estate, supra.

In Nirdlinger's Estate, which appears to be the leading case on the subject of apportionment, the court makes the significant statement that:

"The rise in the value of trust investments, where

such rise has not been shown by one claiming as a life tenant to be due to undistributed earnings, has always been properly regarded, *like the rise in the value of lands held in trust, to be an accretion of the principal, and, therefore, belongs to the remainderman.*" (Italics supplied.)

Counsel for the life tenant has advanced the argument that the trust res is limited to the sum of $3,400 by reason of the language contained in the will devising and bequeathing "the said sum of $3,400.00 or the security represented by such investment," to the remainderman. A similar contention was also advanced in Boyer's Estate, 174 Pa. 16, and Sentner's Estate, 344 Pa. 118, both of which decided to the contrary. A discussion of the problem is not required here, since these cases appear to be directly controlling. We may say, however, that whatever force the argument may have had in those cases is largely negatived in the instant case by the phrase "or the security represented by such investment". If, in the present case, the life tenant had died while the trustee continued to own the residence, that is to say, "the security represented by such investment", it could hardly be contended that the remainderman was not entitled to the real estate under the terms of the will.

In conformity with the foregoing opinion, we make the following

### Order

Now, July 2, 1954, the court orders and directs that the Quakertown Trust Company, trustee under the will of Belle Rufe, deceased, for the benefit of decedent's grandson, Raymond Rufe, allocate all of the proceeds of the sale of the messuage and tract of land, known as 32 North Fourth Street, in the Borough of Quakertown, County of Bucks and State of Pennsylvania, and as particularly described in the order of this court dated May 13, 1953, to the principal of the trust account.