**Heppe Estate**

Before Klein, Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*Mervin J. Hartman* for *Zoob, Cohan & Matz*, for exceptants.

*Holbrook M. Bunting, Jr.*, for *Pepper, Hamilton & Scheetz*, and *Rowland C. Evans, Jr.*, contra.

ADJUDICATION

KLEIN, P. J., Auditing Judge, June 7, 1965.—By deed dated April 16, 1917, and supplements dated March 28, 1923, and November 29, 1924, Florence J. Heppe transferred and assigned certain assets described therein to Girard Trust Company, now Girard Trust Bank, in trust to pay the net income therefrom to his son, F. Marcellus McDowell Heppe, for life, and with further provisions, to become operative upon his death, not necessary to recite at this point in the adjudication, as the details thereof are recited hereinafter in full, and a copy of the deed and amendments, certified by counsel to be a true and correct copy, is annexed hereto.

There have been no prior accountings in the present trust. The fund presently accounted for consists of securities assigned to the trustees by the original deed dated April 16, 1917 (consisting of three $5,000 bonds of various corporations, 50 shares of Philadelphia Traction Company, 50 shares of UGI Co., and cash, of the total value of $25,000), and "Five Hundred (500) shares of the common stock of C. J. Heppe & Son, a Corporation of the State of New Jersey, of the par value of $100 per share . . . $50,000", assigned to the trustee by further deed of trust dated November 29, 1924; and the occasion of the filing of the present

account was the death on April 14, 1964, of F. Marcellus McDowell Heppe, cestui qui trust for life. Margaret Deal Heppe, John Edward Heppe and Fidelity-Philadelphia Trust Company are stated to be executors of his estate . . .

The present account is one of four companion cases involving the Heppe family which are now pending before us. The present trust (referred to as Trust No. 1) was created by Florence J. Heppe by inter vivos deed dated April 16, 1917, and now terminates, as recited above. The second trust (referred to as Trust No. 2) was also created by Florence J. Heppe by inter vivos deed. This deed was made November 4, 1918, and also terminates now. On June 8, 1928, Florence J. Heppe and Mary Frances McDowell Heppe, his wife, established an inter vivos trust (referred to as Trust No. 3) which continues. Florence J. Heppe died testate on September 6, 1941. The trust created under his will (referred to as Trust No. 4) also continues.

A stipulation has been filed covering the facts pertaining to all four cases, which are not in dispute. This stipulation is annexed to the record. We have set forth those facts which we think are pertinent to the question submitted to us for decision in this trust.

C. J. Heppe & Son, a New Jersey corporation, was formed on August 29, 1906, with a capitalization of $1,100,000, to succeed a partnership which had previously been conducted by Christopher J. Heppe and Florence J. Heppe, his son. The new corporation, together with various subsidiary companies, thereafter engaged in the manufacture, sale and distribution of pianos and general musical merchandise, and in the licensing and granting of franchises for the sale of these products. In 1931, the company "became actively engaged in the investment and securities business, and engaged in the music business solely through a subsidiary, Heppe Piano Co."

When Florence J. Heppe died in 1941, he and his wife owned, or controlled through revocable trusts, a total of 2,160 shares of the total of 3,726 shares then issued and outstanding. Of the remaining 1,566 shares, 1,550 shares were held in trust for their issue. It is, therefore, evident that C. J. Heppe & Son was a closely held family corporation.

On April 24, 1957, a Pennsylvania corporation, C. J. Heppe & Son, Inc., was organized. On July 1, 1957, this corporation merged with C. J. Heppe & Son, the New Jersey corporation, on the basis of one share of $100 par value common stock of the Pennsylvania corporation for each share of no par value common stock of the New Jersey corporation then issued and outstanding.

On January 12, 1960, C. J. Heppe & Son, Inc., the Pennsylvania corporation, adopted a plan of liquidation which was completed by August 17, 1960, as the result of which $832.35 was distributed in liquidation for each share of stock outstanding. The book value of each share was $312.29. This figure was based upon the amounts on the books of the corporation for capital, earned surplus and reserve accounts, valuing investments at cost and not market value.

At the time of the liquidation of C. J. Heppe & Son, Inc., the present trust (trust no. 1) held 198 shares of the corporation. $165,425.23 was paid to the trustee for these shares in liquidation. Of this amount, $620.52 was allocated as income, and the balance of $164,804.71 was credited to principal. The account value for the shares was $39,204 and the trustees paid capital gains tax of $36,395.77.

Detailed information concerning the value of the shares held in the four trusts on varying dates calculated under various formulae can be found by reference to the stipulation hereinbefore referred to.

Mr. Hartman, in behalf of the executors of the estate

of F. Marcellus McDowell Heppe, the deceased life tenant, contends that the settlor by the use of the words "issues, *profits*, dividends, interest and income" manifested an intent that the life tenant should receive as income the gain representing the difference between the market value of the stock of C. J. Heppe & Son upon the date of transfer of the stock to the trustees and the pro rata share of the proceeds of liquidation, less the capital gains tax paid thereon, in the net sum of $86,-358.94, which should accordingly be transferred to income and awarded as such. (Italics supplied.)

Counsel for the remainderman and Mr. Haggerty, the guardian and trustee ad litem in trusts nos. 3 and 4, which continue, challenged this position and maintained that the gains realized on the liquidation of the corporation were properly retained and accounted for as principal in the account.

Although the trust before us was created in 1917 and C. J. Heppe & Son, Inc., was liquidated in 1960, all parties in interest agree that the provisions of the Principal and Income Act of July 3, 1947, P. L. 1283, 20 PS §3470, are applicable under the ruling in Catherwood Trust,[1] 405 Pa. 61 (1961), in which Mr. Justice Jones said, at page 78:

". . . *In all audits now pending and henceforth*, distribution shall be made under the provisions of the Principal and Income Act of 1947."

The auditing judge is in full agreement with this conclusion. We must, therefore, examine the provisions of the statute.

Section 5 (3), which deals with allocations of the proceeds of the liquidation of a corporation, states:

"Where the assets of a corporation are liquidated, wholly or partially, amounts paid upon corporate shares as cash dividends, declared before such liquidation began, or as arrears of cumulative preferred, or

---

[1] See also Norvell Estate, 415 Pa. 427 (1964).

guaranteed dividends shall be deemed income, all other amounts paid upon corporate shares on disbursement of the corporate assets to the stockholders shall be deemed principal. All disbursements of corporate assets to the stockholders, whenever made, which are designated by the corporation as a return of capital or division of corporate property, shall be deemed principal. *Any profit or loss resulting from the sale or liquidation of corporate shares shall enure to or fall upon principal.*" (Italics supplied.)

Section 2 provides:

". . . Provided, That the person establishing the principal may himself direct the manner of ascertainment of income and principal and the apportionment of receipts and expenses or grant discretion to the trustee or other person to do so, and such provision and direction, where not otherwise contrary to law, shall control, notwithstanding this act."

It therefore appears to be clear that any profit earned by the trust estate, as the result of the liquidation of the corporation whose shares it held, shall enure to principal, unless the settlor has directed otherwise. Has Florence J. Heppe done this in the present case? We think not.

By reason of the clear provision of the Principal and Income Act that profits earned on the liquidation of a corporation shall belong to principal, the auditing judge is of the opinion, and so rules, that the burden of proof is upon the party who contends that the distribution should be made in a manner different from that directed by the statute, to establish that the settlor clearly expressed such an intent.

Let us now examine the *second* paragraph of the deed of trust in which the executor of the estate of F. Marcellus McDowell Heppe, the deceased life tenant, contends the language is found to support his position.

The trust instrument provided:

"SECOND: In trust to collect, sue for and receive all the issues, *profits*, dividends, interest and income of the said fund so invested, and after payment of all proper taxes, costs and charges, to pay over such net income, as follows:

"(a) To pay to F. Marcellus McDowell Heppe in *equal monthly payments*, the entire net income of the said fund for and during his lifetime.

"(b) And upon the death of F. Marcellus McDowell Heppe to pay the net income *in equal monthly payments* and in equal shares to and among his children, (the children of a deceased child to receive their parent's share of income by representation), until the youngest child shall reach the age of twenty (20) years, when the principal or corpus of the fund so held in trust shall be paid over and distributed absolutely in equal division among the children of F. Marcellus McDowell Heppe, (the children of a deceased child to receive their parent's share of the principal by representation)." (Italics supplied.)

Did the settlor by this language *clearly indicate* that he intended the gains arising from the liquidation to be payable to the income beneficiary because of the use of the word "profits"? We think not.

The general rule appears to be that the use of the word "profits" in the context in which it was used in this case must be interpreted to be synonomous with "income". This is the rule of the Restatement, Trusts 2 §233, page 563:

"Where it is provided by the terms of the trust that the 'income and profits' of the trust estate shall be paid to the life beneficiary, it is a question of interpretation whether the life beneficiary is to receive more than he would receive if it were provided that the 'income' should be paid to him. Ordinarily the inference is that he is not to receive more, and if trust property is sold at a profit, the profit is principal."

To the same effect, see 3 Scott, Trusts §233.5 (2d ed. 1956), page 1773:

". . . The mere fact, however, that it is provided in the trust instrument that the life beneficiary shall be entitled to the 'income and profits' of the trust estate is not ordinarily sufficient to indicate an intention that he should be entitled to receive gains arising from the sale of trust property; the word 'profits' being interpreted as intended merely to be synonymous with the word 'income'."

It is also interesting to note that the legislature in the Act of April 18, 1853, P. L. 503, sec. 9, prohibiting the accumulation of income, uses the expression "rents, issues, interests and profits" to describe income.

The late John Marshall Gest, perhaps the most distinguished probate judge in the history of this Commonwealth, reviewed this subject at considerable length in Leech's Estate, 4 D. & C. 1 (1923). He said, at page 6:

"There is certainly no presumption that when a testator gives, as he does here, 'rents and income' or 'rents and profits' of real estate or 'income and profits' of a residuary estate, he means anything more than 'income.' Profit, in such a connection, means only revenue or return, and the authorities hold that 'rents and profits,' 'income' or 'net income' are all equivalent expressions: Andrews v. Boyd, 5 Greenleaf 199; Earl v. Rowe, 35 Me. 420; Beers v. Narramore, 61 Conn. 13; Oram v. Peirce, 73 N. J. Eq. 391; Re Stevens, 95 N. Y. Supp. 297."

In Dempwolf's Estate, 57 D. & C. 271 (1946), Judge Gross held that a testamentary direction to distribute all "rents, issues, profits and income" from a trust fund to life tenants does not disclose an intent that all capital gains are to be so distributed. See also Graham's Estate, 198 Pa. 216 (1901); Kirlin's Estate, 11 D. & C. 585 (1927).

Counsel for the estate of the life tenant rely primarily upon three cases: Quay's Estate, 253 Pa. 80 (1916); Park's Estate, 173 Pa. 190 (1896), and Summerfield Estate, 26 D. & C. 2d 526 (1962), a recent decision of this court. In our opinion, these cases can be readily distinguished.

In Quay's Estate, testator directed that his estate should be converted and distributed as cash. He created a trust and the trustees took stock in lieu of cash upon distribution of testator's estate. This stock was sold at a profit which was held to be payable as income. Park's Estate dealt with the proceeds of a foreclosed mortgage, and in Summerfield Estate we had before us proceeds of a regulated mutual investment trust.

In Leech Estate, Judge Gest said, at page 6, that Quay's Estate "stands on its own facts." Similarly, Judge Gross, in Dempwolf's Estate said, at page 276, in speaking of Quay and Park: "Our own criticism of these two cases is that they are authority only for the particular facts in each of those cases." We agree with these statements.

Testator's intent is always the polestar and must prevail: Burleigh Estate, 405 Pa. 373 (1961). Every will is, in a sense, unique and is its own best interpreter, and a construction of one is no certain guide to the meaning of another: Emmerich Estate, 347 Pa. 307 (1943). The intent of testator is to be gathered from the whole will, by construing it, as the phrase goes, from its four corners: Walker Estate, 376 Pa. 16 (1954). See Vandergrift Estate, 406 Pa. 14 (1962); Dinkey Estate, 403 Pa. 179 (1961).

In Leech's Estate, supra, Judge Gest said, at page 6:

"Of course, in every case it is the intention of the testator that must govern the interpretation of his will and determine the extent of his gift. Now, in the present case, it seems impossible to believe that the testator,

in his use of the word 'profits,' intended anything other than income."

In like manner, we think that it is difficult to believe that the settlor in the present case intended anything other than what is ordinarily meant to be income in his use of the word "profits". This conclusion is fortified by the fact that settlor directed that the income to both the primary and succeeding life tenants was to be paid "in equal monthly payments". Settlor's language might be construed to include the gains realized in the sale of a stock or other security in the usual course of the administration and distribution of the trust estate, but surely it negatives the suggestion that he intended the income beneficiary to receive the earnings arising from a "one-shot transaction" such as the liquidation of the family corporation, the stock of which formed the bulk of the trust res.

There can be no question that in some cases the use of the word "profits" might include gains resulting from the sale of trust assets.[2] This, however, in our opinion, is not such a case, and the account will, accordingly, be confirmed as stated.

The statement of proposed distribution, as modified by Mr. Lathrop's appearance slip of May 6, 1965, and his letter of May 25, 1965, requests that the accountant be authorized to reserve $70,000 in cash and securities, to be designated as a contingency reserve, pending final settlement of Federal estate tax and other taxes in the estate of F. Marcellus McDowell Heppe, deceased, and it will be so awarded, any balance after the determination and payment of same to be distributed in the same manner as the balance of principal, except in the case of a disposition of the present matter otherwise than as herein determined, on appeal, if taken, in which

[2] For in interesting discussion of the subject, see "Dormant Trust Income" by Donald S. Cohan, Esq., of the Philadelphia bar in Pennsylvania Bar Association Quarterly, March 1965, p. 320.

case a supplemental account, showing the disposition of the said fund of $70,000, is directed to be filed with the auditing judge. . . .

[Awards omitted.]

And now, June 7, 1965, the account is confirmed nisi.

## SUR EXCEPTIONS TO ADJUDICATION

LEFEVER, J., November 5, 1965.—Where settlor directs trustee to distribute "all the issues, profits, dividends, interest and income" to the income beneficiary for life, does this comprehend the net gain* upon the value of trust-owned stock of a family corporation, arising out of the liquidation of that corporation? This is the narrow issue before the court.

We agree with the learned auditing judge that under the precise language of the relevant sections of the Principal and Income Act of July 3, 1947, P. L. 1283, the aforesaid net gain upon the value of the main asset of this trust, the stock of a family corporation, "shall enure to principal, unless the settlor has directed otherwise", and that "the burden of proof is upon the party who contends that the distribution should be made in a manner different than that directed by the statute, to establish that the settlor clearly express such an intent".

We have carefully examined the deed of trust and the record in this case, as well as the comprehensive briefs of able counsel and the cases therein cited. We are all satisfied that exceptants have not met the burden of proving such intent by settlor in this case. In fact, settlor's direction that "net income" be paid to the life beneficiary in "equal monthly payments" negatives such intent. Finally, Quay's Estate, 253 Pa. 80, Park's Estate, 173 Pa. 190, and Summerfield Estate,

---

* Representing the difference between the market value of the stock upon the date of transfer of the stock to the trustee and the pro rata share of the proceeds of liquidation, less capital gains tax thereon.

26 D. & C. 2d 526, upon which exceptants strongly rely, are readily distinguishable from the instant case.

There is no need for us to repeat what has been so well stated by the learned auditing judge in his scholarly adjudication. He properly held that the net gain on the liquidated stock is principal.

Accordingly, the exceptions are dismissed and the adjudication is confirmed absolutely.